UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BENAVIDEZ, HEATHER BENAVIDEZ, J.C.B. a minor, and A.J.B. a minor,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY, POLINSKY CHILDREN'S CENTER, JENNIFER LISK, BENITA JEMISON, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-0558-CAB-(AGS)<br><br>**ORDER ON MOTION TO DISMISS [Doc. No. 14.]** |

This matter comes before the Court on Defendant County of San Diego ("County"), Jennifer Lisk and Benita Jemison's motion to dismiss. [Doc. No. 14.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the motion is granted.

## I. PROCEDURAL BACKGROUND

Plaintiffs John Benavidez, Heather Benavidez ("Parents"), and minor Plaintiffs J.C.B. and A.J.B., filed suit in district court on March 16, 2018, pursuant to 28 U.S.C. § 1331, 1343(a)(b) and 1343(a)(4), alleging that Defendants violated their constitutional rights. [Doc. No. 1.]

On July 5, 2018, an Amended Complaint (the "FAC") was filed. [Doc. No. 12.] The FAC alleges that Plaintiffs' Fourth and Fourteenth Amendment rights were violated.

Plaintiffs assert claims against Defendants Lisk and Jemison under 42 U.S.C. § 1983 for Fourth and Fourteenth Amendment violations in connection with the physical examinations performed on J.C.B. and A.J.B. as part of a juvenile dependency investigation. [*Id*. at 10-16.] Additionally, Plaintiffs bring a 42 U.S.C § 1983 claim against County along with a failure to adequately train allegation. [*Id.* at 12-16.]

On July 19, 2018, Defendants County, Lisk and Jemison filed a motion to dismiss all of the §1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that the FAC fails to state a claim upon which relief can be granted. [Doc. No. 14] Plaintiffs filed their opposition to the motion [Doc. No. 15] and Defendants filed a reply [Doc. No. 16].

## II. ALLEGATIONS OF THE FAC

On March 18, 2016, Defendants Lisk and Jemison sought and obtained a protective custody warrant to temporarily remove Minor Plaintiffs J.C.B. and A.J.B. from their Parents. [Doc. No. 12 at ¶ 19.] On March 18, 2018, Defendant Lisk arrived at Plaintiffs' home with County social worker (Christina Morse) and four Chula Vista police officers to execute the warrant and remove the minor children. [*Id.* at ¶ 20.] Lisk discussed the terms of the removal but did not inform Plaintiffs that the children would be subject to a medical examination at the Polinsky Children's Center ("Polinsky"), did not ask either Parent to sign a Consent to Treat/Intake Medical Examination Form, nor ask them if they wished to be present for the examination. [*Id.* at ¶ 20.]

At the time of the removal, the minor Plaintiffs were healthy, not exhibiting signs of abuse or injury and did not appear to be in need of urgent medical attention. [*Id.* at ¶ 21.] "Moreover, there were no allegations that the Minor Plaintiffs had ever been physically or sexually abused." [*Id.*]

On March 21, 2016, a detention hearing was held in juvenile court. [*Id.* at ¶ 23.] As part of the proceedings a Detention Report was submitted to the court by Defendants Lisk and Jemison. [*Id.*] Contrary to the February 9, 2015 Special Notice[1], Lisk and Jemison's report failed to discuss what efforts were made regarding requesting Parents agree to the medical procedures and contained absolutely no information about the Consent Forms. [*Id.*]

Parents attended the detention hearing but at no time before, during, or after the hearing did Defendants Lisk or Jemison speak with or notify Parents of the physical examinations at Polinsky or attempt to gain their consent for those examinations. [*Id.* at ¶ 24.] Neither Parent was made aware, either before or at the hearing, that a court order authorizing physical examinations of their children had been, or was being, sought. [*Id.* at ¶ 25.]

During the detention hearing, no request was made by the County that the juvenile court order physical examinations of the minor Plaintiffs J.C.B. and A.J.B. [*Id.* at ¶ 26.] At some time, before or after the March 21, 2016 hearing, Defendants Lisk and Jemison

---

[1] On February 9, 2015, the County issued a Child Welfare Services Special Notice to "All Social Work Staff, Child Welfare Services" regarding "Consent to Treat/Intake Medical Examinations." [Doc. No. 12 at ¶ 17.] The Notice set forth, that effective February 10, 2015, no medical examination may occur at Polinsky unless or until there is a signed consent for the examination or a court order. [*Id.*] Additionally, it required a social worker take additional steps to locate the parent and obtain consent before seeking a court order for a medical examination. [*Id.*] The Notice specifies that if a parent is available to sign the consent form, the social worker must ask one parent to sign the Consent for Examination form, indicating whether he or she wants to be present at the intake examination. [*Id.*] The social worker is required to make every attempt to have a parent sign a consent form for a child entering protective custody. [*Id.*] Social workers must address whether the parent signed or did not sign the Consent Form in the Detention Report. [*Id.*]

submitted to the juvenile court for signature an "Order Authorizing Medical Treatment" (the "Order") of the minor Plaintiffs. [*Id.* at ¶ 27.] The Order states:

> Having found that (1) the County of San Diego Health and Human Services Agency ("Agency") has made reasonable efforts to locate or contact a parent and/or guardian of the above~named child to notify them of the Agency's request for a medical examination and treatment of their child who is in the care of the Agency, but such efforts have been unsuccessful; or (2) upon request of the Agency, the child's parent or guardian has objected to the medical examination and treatment of the child; and/or (3) the Agency has made reasonable efforts to schedule the examination of the child for a time when the parent or guardian is available to attend, but such efforts have been unsuccessful, this court orders as follows:
> 1. The Agency may conduct a pediatric medical examination on the child by a licensed physician while the child is in a facility operated by the Agency or any licensed certified foster home, approved kinship/non-related extended family member home, or public or private institution. This examination may include blood and/or urine testing when recommended by a physician for treatment and/or for diagnostic purposes or under the DEC Protocol. The physician will document all observations made during the examination, as well as any information provided by the child…

[*Id.* at ¶ 28.]

Defendants Lisk and Jemison knew when they submitted the Order that they had made no effort to contact the Parents about the request for physical examinations of their children, the Parents had not been given the opportunity to object to the physical examinations, and Parents were never told when or where the examinations of J.C.B. and A.J.B. were scheduled to take place. [*Id.* at ¶ 29.] Lisk and/or Jemison "misrepresented facts to the Juvenile Court regarding their efforts (or lack thereof) to obtain Consent from the parents, and the Court relied on those misrepresentations at the time it signed the ORDER." [*Id.* at ¶ 30.] As a result, the Order issued by the juvenile court was invalid on its face. [*Id.*]

On March 22, 2016, medical procedures and physical examinations were performed on J.C.B. and A.J.B. without parental consent or "valid Court Order" including "a full body inspection including the children's genital and/or anal areas, obtaining urine to test, and

drawing blood and/or vaccinations." [*Id*. at ¶ 31.] Neither Parent attended the examinations, was afforded the opportunity to attend, nor notified of the physical examinations. [*Id*. at ¶ 33.]

### III. LEGAL STANDARD

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### IV. DISCUSSION

Plaintiffs bring their constitutional rights violation claims under 42 U.S.C § 1983. While section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights, it "is not itself a source

of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citation omitted); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

In order "[t]o establish a §1983 liability, a plaintiff must show both a (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Place, Inc.,* 698 F.3d 1128, 1138 (9th Cir. 2012). *See also Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the state; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.").

Plaintiffs allege that Defendants Lisk and Jemison were acting under color of law during the relevant period. [Doc. No. 12 at ¶¶ 9, 10.] "State employment is generally sufficient to render the defendant a state actor." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants do not contest that they were acting under color of state law and the allegations plausibly establish that they were.

The next issue is whether Plaintiffs have been deprived of a right secured by the Constitution and laws of the United States. Plaintiffs assert that their Fourth and Fourteenth Amendment rights were violated by Defendants. As to the Fourteenth Amendment violation Plaintiffs allege two distinct violations, namely: (1) the manner in which the Order authorizing the medical examination of J.C.B. and A.J.B. was obtained and (2) Parents were prevented from attending the examinations performed on J.C.B. and A.J.B.

**A. Violation of Fourteenth Amendment Claim**

Plaintiffs complain that their Fourteenth Amendment constitutionally protected liberty interests, including their right to familial association, were violated by the unlawful physical examination of the minor Plaintiffs without Parents' consent, presence or without a valid court order. [Doc. No. 12 at ¶¶ 43-44.]

### 1. Absence of Parental Consent and Validity of Court Order

It is well established that the Fourteenth Amendment protects the right to family association without governmental interference. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). As the Ninth Circuit explained, the right to familial association "includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Id.* at 1141 (citing *Parham v J.R.*, 442 U.S. 584, 602 (1979). However, this right is not absolute because the "rights of children and parents to be free from arbitrary and undue governmental interference" must be balanced against "the legitimate role of the state in protecting children from abusive parents." *Id.* at 1130.

Parents can, however, be assured that:

> in the absence of parental consent, physical examinations of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an examination exist, and that the administration of the procedure is reasonable under all the circumstances. Barring a reasonable concern that material physical evidence might dissipate, or that some urgent medical problem exists requiring immediate attention, the state is required to notify parents and to obtain judicial approval before children are subjected to investigatory physical examinations.

*Id.* (internal quotations and citations omitted).

Defendants Lisk and Jemison move to dismiss the portion of the claim relating to their purported failure to notify Parents that J.C.B. and A.J.B. would be subjected to medical examination at Polinsky and to ask Parents for their consent to perform these examinations. [Doc. No. 14-1 at 14-20.] Defendants contend that because the examinations took place pursuant to a valid court order, parental consent was not required; the court order provided Parents the requisite notice as it was entered the day before the examinations occurred; and this Court is prohibited from adjudicating the validity of the juvenile court's order under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine prescribes that federal courts lack subject matter jurisdiction to hear what would essentially be appeals from state court judgments. *See*

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* 544 U.S. 280, 283-84 (2005). "Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Feldman*, 460 U.S at 482 n. 16). The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over de facto appeals. *Copper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).

"The doctrine does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to the issues aired in state court, was not the subject of a previous judgment by the state court." *Id.* at 778 (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)). However, *"Rooker-Feldman* bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate her claims." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). As part of its refusal to hear forbidden appeals, a federal district court "must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Doe v. Mann*, 415 F.3d 1038, 1043 (9th Cir. 2005);[2] *see also Cooper,* 704 F.3d at 779 ("[W]e have found claims inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling."). Such circumstances require the federal complaint be dismissed for lack of subject matter jurisdiction. *Bianchi,* 334 F.3d at 898.

An exception to the *Rooker-Feldman* doctrine is provided where a plaintiff is seeking to set aside a state court judgment on the grounds of extrinsic fraud. *Kougasian v.*

---

[2] *See also Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) ("[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.")

*TMSL*, 359 F.3d 1136, 1140 (9th Cir. 2004). Such a plaintiff is not "not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party" and can therefore "seek to set aside a state court judgment obtained through extrinsic fraud" in federal court." *Id* at 1141. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (citing *Green v. Ancora-Citronella Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978)).[3] Put another way, the conduct alleged to be wrongful prevents a plaintiff from challenging it before the state court that relied on it for its decision. *Kougasian*, 359 F.3d at 1140-41.

However, if the plaintiff in a federal action making extrinsic fraud allegations had the opportunity to litigate in the state court, "the extrinsic fraud exception to the *Rooker Feldman* doctrine does not apply." *Bribiesca v. Procopiao, Cory, Hargreaves, & Savitch, LLP*, Case No: 3:16-cv-01225-BEN-WVG, 2017 WL 87110, at *9 (S.D. Cal. Jan. 10, 2017), *aff'd* 704 F. App'x 668 (9th Cir. 2017) (citing *Reusser v. Wachovia Bank, N.A*, 525 F.3d 855, 859-60 (9th Cir. 2008)). This is because fraud is not extrinsic and not a valid ground for setting aside a judgment where "the party has been given notice of the action and has had the opportunity to present his case and protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so." *Id.* (internal quotations omitted).

Here, despite Plaintiffs' protestations to the contrary, Plaintiffs allegations that the Order is invalid on its face is a de facto appeal of the juvenile court's order. The Order specifically found that the Parents had notice that the medical examinations would occur.

---

[3] As the *Green* court explained "[i]n order to be considered extrinsic fraud, the alleged fraud must be such that it prevents a party from having an opportunity to present his claim or defense in court or deprives a party of his right to a day in court." 577 F.2d at 1384 (internal citations and quotation omitted). *See also Bribiesca,* 2017 WL 87110, at *9 (quoting *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 292, 314 (1998)). ("The 'essential characteristic' of extrinsic fraud is that the 'successful party has by inequitable conduct, either direct or insidious in nature lulled the other party into a false security, thus causing the latter to refrain from appearing in court or asserting legal rights' or 'from fully participating in the proceeding.'").

By alleging that this was wrong, Plaintiffs seek to undercut the state Order. Thus, *Rooker-Feldman* applies. *See Bianchi,* 334 F.3d at 898 (a federal court action is inextricably intertwined with a state court's decision if "adjudication of the federal claims could undercut the state ruling or require the district court to interpret the application of state laws or procedural rules"). The next question is whether Plaintiffs allegations fall within the "extrinsic fraud" exception to the *Rooker-Feldman* doctrine.

Plaintiffs generally allege that the juvenile court issued the Order authorizing the medical examinations of J.C.B. and A.J.B. as a result of facts either "concealed" or "misrepresented" by Defendants Lisk and Jemison regarding the efforts they made to obtain the Parents' consent to the performance of the medical examination on the children or to schedule the examinations at a time when the Parents could attend, but Plaintiffs fail to specify the exculpatory facts that were not disclosed. [Doc. No. 12 at ¶¶ 29, 30, 43.] Plaintiffs also complain that Defendants Lisk and Jemison knew that none of the facts relied upon and outlined in the Order were true. [*Id.* at ¶ 30.] Additionally, Plaintiffs allege that the request to perform the physical examinations on the children took place outside of the detention hearing on March 21, 2016 - meaning they were never told about the exams and were denied the opportunity to object to them at the hearing. [*Id.* at ¶ 24-26.] Yet, it is not clear if any other hearings took place in state court following the March 21, 2016 hearing. Neither is it clear when Parents became aware of the juvenile court's order authorizing the examinations or the circumstances surrounding its issuance. Similarly, it is not alleged when Parents became aware of the alleged fraud or when that knowledge was acquired in relation to the juvenile proceedings, nor is it known if Parents were subsequently afforded the opportunity to voice their concerns regarding the alleged misrepresentations and concealments of Defendants Lisk or Jemison in state court. In sum, Plaintiffs have failed to allege "that Defendants committed any fraud that they were prevented from challenging in the [state court] proceedings." *Ragan v. Cnty. of Humboldt Dep't of Health & Human Servs.,* Case No. 16-cv-05580-RS, 2017 WL 878083, at *4 (N.D. Cal. Mar. 6, 2017).

Therefore, the motion to dismiss Plaintiffs' Fourteenth Amendment claim for the physical examination of J.C.B. and A.J.B. absent Parents' consent and valid court order is GRANTED. However, Plaintiffs are given LEAVE TO AMEND this portion of the claim to assert allegations that the extrinsic fraud exception to the *Rooker-Feldman* doctrine applies.

### 2. The Children's Medical Examinations Outside Of Their Parents' Presence

The constitutionality of performing investigatory physical examinations of children outside their parents' presence was directly addressed by the Ninth Circuit in *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). The court stated:

> Parents have a right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted). Likewise, children have a corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures, including examinations - particularly those …. that are invasive or upsetting. The interest in family association is particularly compelling at such times, in part because of the possibility that a need to make medical decisions will arise, and in part because of the family's right to be together during such difficult and often traumatic events.

*Id.* at 1141-42.

Nine years after *Wallis,* the Ninth Circuit, reaffirmed that:

> first, parents and children maintain clearly established familial rights to be with each other during potentially traumatic medical examinations; and second, this right may be limited in certain circumstances to presence nearby the examinations, if there is some "valid reason" to exclude family members from the exam room during a medical procedure.

*Greene v. Camreta*, 588 F.3d 1011, 1036 (9th Cir. 2009), *vacated in part,* 563 U.S. 692 (2011) *and vacated in part*, 661 F.3d 1201 (9th Cir. 2011) *as to unrelated Fourth Amendment issue*. The *Green* court reiterated that "government officials cannot exclude parents entirely from the location of their child's physical examination absent parental

consent, some legitimate basis for exclusion, or an emergency requiring immediate medical attention." *Greene,* 588 F.3d at 1037.

Consistent with these decisions, courts within this district have held on multiple occasions that medical procedures conducted at Polinksy, including examination of the external genitalia and rectum, such as those performed at on J.C.B. and A.J.B., violate the constitutional rights of parents and their children. In *Parkes v. County of San Diego*, 345 F. Supp. 2d 1071 (S.D. Cal. 2004), the court held that the County's interests in ensuring that children entering Polinsky were not in need of medical care and in protecting other children currently in its care from contagious diseases did not outweigh the intrusive nature of the medical examinations. The court also found that the policy of not allowing non-offending parents to be present during medical examinations that included a pelvic examination, inspection of child's external genitalia, hymen and rectum violated the liberty interests of both parents and children. *Id.* (citing *Wallis*, 202 F.3d at 1142).

In *Swartwood v. County of San Diego,* 84 F. Supp. 3d 1093, 1118 (S. D. Cal. 2014), the court declined to find a brief, ten to twenty minute medical assessment of children, conducted in a light pleasant atmosphere that included a standard pediatric physical examination which also involved an examination of the children's external genitalia and rectum outside the mandates of *Wallis* and *Greene*. The court noted that although the primary purpose of the examination was to ensure the well-being of the children, it was still investigatory in purpose because the physician was "looking for" contagious diseases and signs of physical or sexual abuse. *Id.* at 1119. In reaching this conclusion, the court explained that neither *Wallis* nor *Greene* "indicates that a family's constitutional rights depend on how long the exam lasts or the degree of invasiveness." *Id.*

Similarly, in *Mann v. County of San Diego*, 147 F. Supp. 3d 1066, 1080 (S.D. Cal. 2015), the court held:

> where a 'potentially traumatic' medical examination is at issue, such as one involving an external genital examination, parents have a right to be present unless there is a valid reason to exclude them, such as a medical emergency, allegations of abuse, or a credible reason for believing they would interfere

with the medical examination. This right to be present necessarily encompasses a right to receive actual notice that the examination will occur.

In *Reynolds v. County of San Diego,* 224 F. Supp. 3d 1034, 1063-64 (S.D. Cal. 2016), *rev'd in part on other grounds sub nom, Reynolds v. Bryson,* 716 F. App'x 668 (9th Cir. 2018), the court found that similar exams performed on children where parents were not allowed to be present in the examination room or an adjoining room, the primary purposes of which was for the health and welfare of the children and another purpose was to investigate whether or not child abuse or neglect had in fact occurred, violated the parents' and minor child's constitutional rights.

Thus, regardless of whether the state court order was valid or obtained by fraud the Parents had a constitutional right to be present at the medical examinations, and the minor children had the "corresponding right to the love, comfort, and reassurance of their parents while they are undergoing medical procedures, including examinations - particularly those …. that are invasive or upsetting." *Wallis*, 202 F.3d at 1141-42. *See also Greene,* 588 F.3d at 1037; *Parkes,* 345 F. Supp. 2d 1071; *Swartwood,* 84 F. Supp. 3d at 1118; *Mann,* 147 F. Supp. 3d at 1080; *Reynolds,* 224 F. Supp. 3d at 1063-64. However, the allegations are unclear as to whether this right was violated.

First, the FAC fails to identify the government official/s who excluded Parents. *See Greene,* 588 F.3d at 1037 ("government officials cannot exclude parents…"). The FAC alleges that at the time of removal Defendant Lisk found the minor children to be healthy, not exhibiting signs of abuse or injury, not in need or urgent medical attention, and there were no allegations that they had ever been physically or sexually abused. [Doc. No. 12 at ¶ 21.] Further, the FAC alleges that examinations performed on J.C.B. and A.J.B. included "but may not be limited to, a full body inspection including the children's genital and/or anal areas, obtaining urine to test, and drawing blood and/or vaccinations." [*Id.* at ¶ 31.] Second, the FAC only vaguely alleges that Parents were never told, and no attempt was made to notify them, when or where the physical examinations of the minor children would occur and whether they could be present. [*Id.* at ¶¶ 29, 33.] Third, the FAC contains no

13

factual allegations that Defendants Jemison and Lisk were responsible for providing Parents with the information regarding the location, date and time of the examination so that they could be present, were present while the examinations were being performed, or that they personally excluded Parents from attending the examination. Defendants Lisk and Jemison are only identified in the FAC as officers, agents and employees of the County. [*Id.* at ¶¶ 9, 10.] It unclear from the allegations in the FAC if they were case workers, social workers, or what exactly their assigned roles were in the juvenile proceeding and if they are the government officials responsible for providing Parents with actual notice that the examinations would occur.

Accordingly, this portion of the Fourteenth Amendment claim is DISMISSED with LEAVE TO AMEND.

**B. Violation of Fourth Amendment Claim**

The Fourth Amendment protects people against unreasonable searches and seizures, which can include certain medical examinations. *Yin v. State of California*, 95 F.3d 864, 870 (1996).

The FAC alleges Defendants Lisk and Jemison "conspired to cause and allow Minor Plaintiffs to be subjected to unlawful medical procedures, including examinations, without proper and just warrant after due process, without reasonable cause." [Doc. No. 12 at ¶ 42.] By misrepresenting and concealing facts from the juvenile court, minor Plaintiffs contend their Fourth Amendment rights against unreasonable searches and seizures were violated. [*Id.* at ¶ 43.]

Defendants Lisk and Jemison seek to dismiss this portion of the 42 U.S.C § 1983 claim because they did not conduct the medical examinations nor have any responsibility for them. [Doc. No. 14-1 at 21.] Defendants posit that Plaintiffs have only alleged that they were aware of the medical examinations of J.C.B. and A.J.B. and that knowledge alone is insufficient to state a Fourth Amendment claim. The Court agrees. Plaintiffs must plead facts to support to their assertion that Defendants Lisk and Jemison's were "integral

participants" [Doc. No. 15 at 14] in the unconstitutional search of minor Plaintiffs instead of simply making bare conclusory allegations.

Accordingly, Defendants Lisk and Jemison's motion to dismiss minor Plaintiffs' Fourth Amendment due process claims is GRANTED with LEAVE TO AMEND.

### C. Qualified Immunity

In their dismissal motions Defendants Jemison and Lisk contend that even if they did violate Plaintiffs' constitutional rights they are entitled to qualified immunity. Having given Plaintiffs leave to amend to state a claim, the Court declines to reach the issue. Therefore, that portion of the motion to dismiss is DENIED WITHOUT PREJUDICE.

### D. Municipality Liability

Here, there is no question that County is a municipal actor. Therefore, County may be held liable for the alleged violations only if the conduct of Defendants Jemison, Lisk, and DOE employees was the product of a County policy or custom. *Monell,* 436 U.S. 658. County cannot, however, be held liable under § 1983 "*solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondent superior theory." *Id.* at 691 (emphasis in original).

A plaintiff may show a policy or custom of a municipality either: "(1) by showing a longstanding practice of custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of a decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citations omitted).

Here, it is alleged that the medical examinations were performed on J.C.B. and A.J.B. "pursuant to the COUNTY's policies, procedures, customs and/or practices. The COUNTY performs medical procedures, including examinations, on every child that is admitted to PCC. Despite the February 9, 2015 Special Notice, the COUNTY's policies,

15

3:18-cv-0558-CAB-(AGS)

procedures, practices, customs, and/or training continue to permit or allow these medical procedures, including examinations, to be conducted without parental notice or consent and without an urgent medical need or to preserve evidence; and without informing parents of the medical procedure, including examinations; and excluding parents from attending such medical procedure, including examinations, when they occur." [Doc. No. 12 at ¶ 35.] Further, it is alleged that County, through Defendants Lisk and Jemison "collaborated with other social workers, County employees, doctors, medical providers and others (Does 1 to 50) who participated in conducting or allowing to be conducted unwarranted, non-consensual and non-emergent medical procedures, including examinations, of children at PCC, a COUNTY operated facility without the minors' parents' presence, all of which constitutes a traditional government function performed as state actors." [*Id.* at ¶ 37.]

The FAC concedes that in response to multiple court rulings on February 9, 2015, the County announced to "All Social Work Staff" new policies, procedures practices and/or customs that would provide parents and children with some constitutional protection when it came to the administration and performance of medical procedures and physical examinations on children who are placed in the Polinsky care facility. [*Id.* at ¶ 51.] It is also alleged that despite the knowledge gained from multiple court rulings and the 2015 policies, County's Detention Report form was not updated to reflect the changed policies, did not prompt social workers to address whether a parent did or did not sign the consent for medical procedures form, and did not address if social workers were allowed to override and delete this section of the form. [*Id.* at ¶ 52.] Further, it is alleged that "the COUNTY's policies, procedures, practices, customs, and training did not specify the actions that should be taken by a social worker when obtaining and executing a Protective Custody Warrant." [*Id.*] As a result, it is alleged that "children continue to be subjected to medical procedures, including examinations, at PCC in the absence of parental consent, valid court order, exigency or urgent medical need, and without parental notification and presence." [*Id.*]

Plaintiffs allege that the County had an unconstitutional policy in place before the *Swartwood* decision but then concede that the County announced to "All Social Work

Staff' new policies, procedures practices and/or customs that would provide parents and children with some constitutional protection when it came to the administration and performance of medical procedures and physical examinations on children who are placed in the Polinsky care facility. [*Id.* ¶ 51.] These seemingly inconsistent statements concerning the County's policy of performing medical procedures and examinations on every child that is admitted to Polinsky, make it difficult to decipher what, if any, *Monell* claim Plaintiffs are attempting to bring related to these examinations. Moreover, as Defendant County point out "Plaintiffs do not allege any facts supporting their allegation that the County failed to implement more policies to ensure the February 2015 policy was followed, nor do Plaintiffs explain why this would have been necessary when the February 2015 policy already existed." [Doc. No. 14-1 at 28.] Furthermore, the actions taken by two county employees, Defendants Jemison and Lisk, on one occasion, do not establish the existence of a policy.

As to the allegations regarding the Detention Report Form and execution of a Protective Custody Warrant, these vague allegations do not give rise to the plausible inference that there was a municipal policy or custom in place or that any County employee with the requisite authority acted with deliberate indifference. Plaintiff does not allege with any degree of specificity that Defendants Lisk and Jemison, the County employees who committed the alleged constitutional violations, were officials with final policy-making authority, nor that the challenged action itself was therefore an act of government policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where- and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in questions"). Neither have Plaintiffs alleged that the decision to apply for the Court order without first attempting to gain parental consent was ratified by an official with final policy-making authority. *See Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Cir. 1999) (to plausibly plead ratification the

plaintiff must alleged facts that show that "the authorized policymakers approve a subordinate's decision and the basis for it.").

Moreover, even assuming that a violation of Plaintiffs' due process rights occurred, Plaintiffs have not demonstrated the existence of a municipal policy, practice or custom since the corrective action was instituted in 2015, they have only alleged a single occurrence of an unconstitutional action. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (citation omitted) ("[o]nly if a plaintiff shows that his injury resulted from a permanent and well settled practice may liability attach for injury resulting from a local government custom."); *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233-34 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.") (italics in original).

As currently pled, Plaintiffs have failed to allege any facts which "might plausibly suggest" that they were subject to a constitutional deprivation pursuant to any municipal custom, policy, or practice implemented or promulgated with deliberate indifference to constitutional rights, or that such a policy was the "moving force" or cause of their injury. *See Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal's* pleading standards to *Monell* claims.). Accordingly, the motion to dismiss this portion of the claim against County is GRANTED with LEAVE TO AMEND.

**E. Failure to Adequately Train Claim Under 42 U.S.C. § 1983**

Defendant County also seeks dismissal of the failure to train claim that Plaintiffs allege in the second cause of action on the grounds that it also fails to state a claim. [Doc. No. 14-1 at 29-30.]

A local government body may be held liable for its failure to train employees or failure to provide a different kinds of training if the failure causes a constitutional violation, and the failure amounts to deliberate indifference to the rights of individuals who come into contact with the employees. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) ("[I]t may happen that in light of the duties assigned to specific officers or employees the

18

3:18-cv-0558-CAB-(AGS)

need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.").

In order to allege a claim for failure to properly train, Plaintiffs must include in their pleadings enough "factual content" to support a reasonable inference to show that: (1) they were deprived of a constitutional right; (2) the municipality had a training policy that amounts to deliberate indifference to the constitutional rights of the persons' with whom the employee are likely to come into contact; and (3) their constitutional injury would have been avoided had the municipality properly trained those employees. *Blakenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee*, 250 F.3d at 681. However, "[m]ere negligence in training or supervision . . . does not give rise to a *Monell* claim." *Doughterty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that it actionable under § 1983." *City of Canton*, 489 U.S. at 391.

Here, it is alleged that County is "acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train and supervise its officers, agents and employees, in providing the Constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, and under California law, which protects such rights in regards to the medical procedures, including examinations, of children at PCC." [Doc. No. 12 at ¶ 48.]

All that is tendered are "naked assertion[s] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678 (internal quotation marks and citation omitted). Plaintiffs have not "identified the challenged policy/custom, explained how the policy/custom was deficient, explained how the policy/custom caused the plaintiff harm, and reflected how the policy/custom amounted to deliberate indifference, i.e. explained how the deficiency

involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia,* 687 F. Supp. 2d 1141, 1149 (E.D. Cal. Aug. 18, 2009) (identifying the allegations the Ninth Circuit in *Lee,* 250 F.3d 668*,* determined would rise above the level of 'bare allegations" sufficient to state a *Monell* claim under *Iqbal).* As a consequence, the motion to dismiss the failure to adequately train portion of the claim against County is GRANTED with LEAVE TO AMEND.

V. **CONCLUSION**

Plaintiffs have failed to assert facts sufficient to demonstrate a constitutional violation of the Fourth and Fourteenth Amendments. Further, Plaintiffs fail to connect the County to the execution of a policy or custom necessary to establish a *Monell* claim. As a consequence, Plaintiffs have failed to state section 1983 claims upon which relief can be granted. Accordingly, the Court **GRANTS** Defendants' motion to dismiss with leave to amend as set forth above [Doc. No. 14].[4] Plaintiffs have up to and including **November 9, 2018** to file a second amended complaint.

It is **SO ORDERED.**

Dated: October 12, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[4] In light of the dismissal of the complaint, the Court need not address Defendants' assertion that Plaintiffs are not entitled to punitive damages for the alleged violations of section 1983 "because there can be no damages under § 1983 where there is no underlying constitutional violation." *McClurg v. Maricopa Cnty.*, No. CIV-09-1684-PHX-MHB, 2012 WL 3655318, at *9 (D. Ariz. Aug. 27, 2012). Accordingly, the Court **DENIES WITHOUT PREJUDICE** and **AS MOOT** Defendants' request to dismiss Plaintiffs' punitive damages claim [Doc. No. 14-1 at 27].