1  THOMAS E. MONTGOMERY, County Counsel
   County of San Diego
2  By CHRISTINA SNIDER, Senior Deputy (SBN 269107)
   1600 Pacific Highway, Room 355
3  San Diego, California 92101
   Telephone: (619) 531-6229  Facsimile: (619) 531-6005
4  E-mail: christina.snider@sdcounty.ca.gov

5  Attorneys for Defendant County of San Diego (also erroneously named as "San Diego
   Health and Human Services Agency" and "Polinsky Children's Center"), Jennifer Lisk,
6  and Benita Jemison

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOHN BENAVIDEZ, HEATHER                 )  Case No. 18-cv-0558-CAB(AGS)
    BENAVIDEZ, J.C.B. a minor and A.J.B. a  )
12  minor by and through their Guardian Ad  )  **MEMORANDUM OF POINTS AND**
    Litem, DIANA BENAVIDEZ,                 )  **AUTHORITIES IN SUPPORT OF**
13                                          )  **DEFENDANTS COUNTY OF SAN**
           Plaintiffs,                      )  **DIEGO, JENNIFER LISK AND**
14                                          )  **BENITA JEMISON'S MOTION TO**
           v.                               )  **DISMISS PLAINTIFFS' SECOND**
15                                          )  **AMENDED COMPLAINT**
    COUNTY OF SAN DIEGO; SAN DIEGO          )
16  HEALTH AND HUMAN SERVICES               )  [Fed. R. Civ. P. 12(b)(6)]
    AGENCY, POLINSKY CHILDREN'S             )
17  CENTER; JENNIFER LISK, BENITA           )  Date:        January 25, 2019
    JEMISON, and DOES 1 through 50,         )  Courtroom:   4C (Schwartz)
18  inclusive,                              )  Honorable Cathy Ann Bencivengo
                                            )
19         Defendants.                      )  Trial Date:  None
                                            )
20                                          )  PER CHAMBERS RULES, NO ORAL
                                            )  ARGUMENT UNLESS SEPARATELY
21                                          )  ORDERED BY THE COURT
                                            )
22  _____)

23

24

25

26

27

28

                                                    18-cv-00558-CAB(AGS)

1

# TOPICAL INDEX

2

3                                                                           <u>Page</u>

4

5    TABLE OF AUTHORITIES ...................................................................................ii

6    I.     INTRODUCTION ...........................................................................................1

7    II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS .....................................2

8    III.   LEGAL STANDARD ....................................................................................6

9    IV.    ARGUMENT..................................................................................................7

10          A. Plaintiffs' First Cause of Action Against Ms. Lisk and Ms. Jemison Fails .........7

11              1.  Ms. Lisk and Ms. Jemison did not Violate Plaintiffs' Constitutional
12                  Rights.........................................................................................................7

13                  a)  Alleged Failure to Notify the Parents and Obtain Consent ......................8

14                  b)  Alleged Failure to Provide Notice at Detention Hearings ......................14

15                  c)  Alleged Conduct of Exams Outside of Parental Presence ......................14

16                  d)  Alleged Conspiracy to Conduct the Polinsky Examinations ..................17

                2.  Ms. Lisk and Ms. Jemison are Entitled to Qualified Immunity...................19
17
                3.  Plaintiffs do not State a Claim for Punitive Damages .................................22
18
            B. Plaintiffs' Second Cause of Action Against the County Fails ..........................22

19   V.     CONCLUSION.............................................................................................25

20

21

22

23

24

25

26

27

28

1

2

# TABLE OF AUTHORITIES
## CASES                                          Page(s)

3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 6, 18

4

*Baker v. McCollan*, 443 U.S. 137 (1979) ....................................................... 7, 8

5

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ................... 7

*Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ............................ 23

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 6, 18

7

*Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003).................................. 10

8

*Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985) .......................................... 19

9

*Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191 (9th Cir. 2014) ...................... 24

10

*Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921 (9th Cir. 2001) ............................ 24

11

*City of Canton v. Harris*, 489 U.S. 378 (1989) ..................................... 22, 23, 24

12

*Connick v. Thompson*, 563 U.S. 51 (2011) ............................................. 23, 24

13

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012)........................................... 10

14

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................... 8

15

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 478 (1983)......................... 11

*Daniels v. Williams*, 474 U.S. 327 (1986) .................................................... 8

16

*Davis v. City of Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) ........................... 23

17

*Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000) ...................................... 15

18

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ..................................... 15

19

*Doe & Assocs. Law Offices v. Napolitano,* 252 F.3d 1026 (9th Cir. 2001) ................ 10, 12

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ........................... 23

20

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)............................ 10

21

*Fair Hous. v. Combs*, 285 F.3d 899 (9th Cir. 2002) ...................................... 22

22

*Flores v. County of L.A.*, 758 F.3d 1154 (9th Cir. 2014) ............................... 24

23

*Fonda v. Gray,* 707 F.2.d 435, 438 (9th Cir.1983)......................................... 18

24

*Fox v. County of Tulare*, No. 1:11-cv-O520 AWI SMS, 2014 WL 3687735
   (E.D. Cal. July 24, 2014) ....................................................................... 18

25

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) ............................................. 18

26

*Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380 (9th Cir. 1978)................... 11

27

*Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009) ......................... 5, 17, 20, 21

28

# TABLE OF AUTHORITIES
## (Continued)

### CASES                                                    Page(s)

*Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) ............................................. 19

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505
 (6th Cir. 1991) ................................................................................................ 19

*James v. United States Parole Comm'n*, 159 F.3d 1200 (9th Cir. 1998) ........................ 15

*Jones v. City & County of San Francisco*, 621 F. App'x 437 (9th Cir. 2015) .................... 8

*Kirkpatrick v. County of Washoe*, 843 F.3d 784 (9th Cir. 2016) ....................................... 20

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ....................................................... 19, 20

*Kenmen Eng'g v. City of Union*, 314 F.3d 468 (10th Cir. 2002).................................... 11

*Kougasian v. TMSL*, 359 F.3d 1136 (9th Cir. 2004) .................................................... 11, 12

*Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) ................................................ 18

*Mann v. County of San Diego*, No. 3:11-cv-0708-GPC-BGS, 2013 WL 4046642
 (S.D. Cal. Aug. 8, 2013) ........................................................................... 9, 20, 25

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) ........................................................ 23

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) ........................................................ 11

*Menchaca v. San Diego Sheriff's Dep't*, No.: 3:17-cv-02059-JAH-JMA,
 2018 WL 840252 (S.D. Cal. Feb. 13, 2018) ...................................................... 2

*Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999).................. 18

*Merritt v. Cty. of L.A.*, 875 F.2d 765 (9th Cir. 1989) ......................................... 24

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ............................................ 23, 24

*Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) ...................................................... 7

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ...................................................... 6

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003)............................................................ 10

*Nunez v. City of L.A.*, 147 F.3d 867 (9th Cir. 1998) ............................................... 7, 8

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ....................................................... 6

*Pearson v. Callahan*, 555 U.S. 223 (2009) .......................................................... 20

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014) ...................................................... 20

*Rabkin v. Dean*, 856 F. Supp. 543 (N.D. Cal. 1994) ............................................. 19

*Ragan v. Cty. of Humboldt HHS*, No. 16-cv-05580-RS, 2017 WL 878083
 (N.D. Cal. Mar. 6, 2017)............................................................................... 11, 12

*Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir. 2008) ................................... 12

## TABLE OF AUTHORITIES
### (Continued)

**CASES**            **Page(s)**

*Runs After v. United States*, 766 F.2d 347 (8th Cir. 1985) ................................ 19

*S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017) ............................... 19, 20, 21

*Sangraal v. City & Cty. of S.F.* , No. C 11-04884 LB, 2013 WL 3187384
    (N.D. Cal. June 20, 2013) ................................................................ 8

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................... 20

*Schweiker v. Hansen*, 450 U.S. 785 (1981) ............................................ 15

*Smith v. Freland*, 954 F. 2d 343 (6th Cir. 1992) ....................................... 15

*Stanley v. Ill.*, 405 U.S. 645 (1972) ................................................. 7

*Swartwood v. Cty. of San Diego*, 84 F. Supp. 3d 1093 (S.D. Cal. 2014) ................ 21

*Swartz v. KPMG L.L.P.*, 476 F.3d 756 (9th Cir. 2007) ................................. 6

*Thompson v. City of Galveston*, 979 F. Supp. 504 (S.D. Tex. 1997) .................... 19

*Thompson v. City of L.A.*, 885 F.2d 1439 (9th Cir. 1989) ............................. 23

*Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991) ............................... 18

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ..................................... 23

*United States v. Salerno*, 481 U.S. 739 (1987) .................................... 7

*U.S. v. Kama*, 394 F.3d 1236 (9th Cir. 2005) ...................................... 2

*Vance v. County of Santa Clara*, 928 F. Supp. 993 (N.D. Cal. 1996) ................. 2

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) ................................. 5, 7, 20, 21

*White v. Pauly*, 137 S. Ct. 548 (2017) ........................................... 19, 20, 21

*Yin v. California*, 95 F.3d 864 (9th Cir. 1996) ................................... 7

**STATUTES**

42 U.S.C. § 1983 ........................................................... *passim*

Welf. & Inst. Code
    Section 388 ............................................................. 14
    Section 248.5 ........................................................... 14

**OTHER**

Fed. R. Civ. P. 12(b)(6) ................................................... 5, 6

1   **I.   INTRODUCTION**

2       John and Heather Benavidez, along with their children J.C.B. and A.J.B.

3   ("Plaintiffs"), sue the County of San Diego and two social workers under 42 U.S.C.

4   § 1983 for alleged violations of Plaintiffs' constitutional rights.

5       Plaintiffs admit that J.C.B. and A.J.B. were removed from their parents' custody

6   pursuant to a valid court order.  But Plaintiffs allege their rights were violated when

7   J.C.B. and A.J.B. were given medical examinations—allegedly without parental consent

8   or involvement—while J.C.B. and A.J.B. stayed at Polinsky Children's Center

9   ("Polinsky").  Polinsky is a temporary emergency shelter operated by the County of San

10  Diego (the "County") for children removed from their parents' custody.

11      Plaintiffs allege that two social workers, Jennifer Lisk and Benita Jemison, are

12  liable because they failed to obtain parental consent to the examinations, even though the

13  juvenile court entered individualized court orders authorizing the examinations.

14  Plaintiffs allege that Ms. Lisk and Ms. Jemison are also liable because they "knew and

15  agreed" that J.C.B. and A.J.B would receive these examinations, even though Ms. Lisk

16  and Ms. Jemison did not conduct medical examinations or have any responsibility for the

17  examinations.  Plaintiffs finally allege that Ms. Lisk and Ms. Jemison are liable because

18  they did not tell the parents the precise date, time, and location of the examinations,

19  although Plaintiffs do not plausibly allege it was Ms. Lisk and Ms. Jemison's duty to do

20  so.  Plaintiffs' allegations against Ms. Lisk and Ms. Jemison do not state a claim.

21  Regardless, they are also entitled to qualified immunity because no clear precedent would

22  have apprised them that they were violating a clearly-established constitutional right.

23      Plaintiffs also allege the County is liable because it allegedly has a policy of

24  permitting medical examinations at Polinsky without parental consent or involvement.

25  But Plaintiffs contradict themselves, also alleging the County had a written policy as of

26  February 2015 that did not allow examinations to occur without consent or a court order

27  and provided for parental presence at the exams.  Plaintiffs otherwise allege only legal

28  conclusions and standards, and Plaintiffs' sole factual support for the existence of any

1  unconstitutional policy is the medical examinations that allegedly occurred in this case

2  alone.  A singular, isolated incident is insufficient to establish municipal liability.

3      This Court already held that Plaintiffs' FAC failed to state a claim and allowed

4  Plaintiffs leave to amend.  Plaintiffs have added only scant conclusory allegations in their

5  SAC that do not salvage their claims.  Plaintiffs' case should be dismissed with prejudice.

6  **II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS**

7      Plaintiffs are John and Heather Benavidez ("John and Heather"), along with their

8  minor children J.C.B. and A.J.B.  (SAC ¶¶ 5, 19.)  Plaintiffs allege that individual

9  defendants Ms. Lisk and Ms. Jemison are County social workers (SAC ¶¶ 9, 10, 47.)

10     On March 18, 2016, Ms. Lisk and Ms. Jemison obtained a protective custody

11  warrant to remove J.C.B. and A.J.B. from John and Heather' custody.  (SAC ¶ 25.)  After

12  Ms. Lisk removed the children from their parents' custody, Ms. Lisk and another social

13  worker Christina Morse (who is not a party to this case) transported the children to

14  Polinsky.[1]  (SAC ¶¶ 26, 28.)  Polinsky is a temporary emergency shelter run by the

15  County for children who must be separated from their families for their own safety, or

16  when parents cannot provide care.

17     Plaintiffs do not challenge the children's removal or the children's placement at

18  Polinsky.  Rather, Plaintiffs challenge the constitutionality of the routine medical

19  examinations the children received once they entered Polinsky.  (*E.g.*, SAC ¶¶ 39-40.).

20     Plaintiffs claim that in February 2015 (prior to the events alleged in the SAC), the

21  County instituted a policy outlining the procedure for children to be examined.  (SAC

22  ¶ 17.)  The policy states that before a child could receive a medical exam at Polinsky, a

---

[1]  Plaintiffs sue "San Diego Health and Human Services Agency" (the "Agency") and Polinsky as individual defendants.  But the Agency is merely a municipal department of the County, and Polinsky is a County facility operated by the Agency.  Thus they cannot be sued separately under § 1983.  *U.S. v. Kama*, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (Ferguson, W., concurring specially) ("municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983"); *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (the term "persons" within § 1983 "does not encompass municipal departments.") (citations omitted); *see Menchaca v. San Diego Sheriff's Dep't*, No. 317CV02059JAHJMA, 2018 WL 840252, at *3 (S.D. Cal. Feb. 13, 2018) (dismissing claim against "San Diego Sheriff's Department" because "[d]epartments of municipal entities are not 'persons' subject to suit under § 1983.")

1   social worker must take "reasonable steps" to locate the parent and seek consent.  (SAC

2   ¶ 17; RJN Ex. A at 2.)  If the parent did not consent, the exam should not occur without a

3   court order.  (*Id.*)  The policy states that if the parent does not indicate whether he or she

4   would like to be present at the medical exam, Polinsky intake workers should contact the

5   parent to invite them to attend the exam.  (RJN, Ex. A at 3.)  The policy also states that

6   social workers should indicate in their reports submitted to the juvenile court for the

7   initial hearing in the juvenile proceedings (the detention hearing) whether the parent had

8   signed the consent form.  (SAC ¶ 17; RJN Ex. A at 8.)

9        Plaintiffs allege that the social workers in this case did not follow County policy.

10   Plaintiffs claim that when Ms. Lisk removed the children from their parents' custody, Ms.

11   Lisk did not ask the parents to sign a consent form, inform them about the medical

12   examinations, or ask if they would like to be present for the exams.  (SAC ¶¶ 26, 30.)

13   Plaintiffs claim that Ms. Lisk "consulted with" Ms. Jemison during the removal, but that

14   Ms. Jemison also did not ask John and Heather about the consent form.  (*Id.*)

15        Plaintiffs allege that Ms. Lisk and Ms. Jemison did not follow County policy with

16   regard to providing John and Heather notice in the juvenile court.  Plaintiffs allege that

17   Ms. Lisk and Ms. Jemison did not discuss the medical examinations at all with John and

18   Heather prior to or during the first juvenile court hearing in their case (the detention

19   hearing) which was held on March 21, 2016.  (SAC ¶¶ 29, 31, 35.)  Plaintiffs claim that

20   Ms. Lisk and Ms. Jemison then submitted a report to the juvenile court which did not

21   address the consent forms, medical examinations, or their alleged failure to tell John and

22   Heather they could be present during the examinations.  (SAC ¶¶ 30, 32.)

23        Plaintiffs concede, however, that the juvenile court did in fact enter court orders on

24   March 21, 2016, which authorized the medical examinations of J.C.B. and A.J.B.  (SAC

25   ¶¶ 35, 36, 38; Doc. No. 23, Exs. I and J (March 21, 2016 court orders).)  The orders

26   contain a finding by the court that either: (1) the social workers reasonably attempted to

27   notify a parent of the examinations but were unsuccessful; (2) the child's parent objected

28   to the exam; and/or (3) the County attempted to make reasonable efforts to schedule the

1   exam when a parent could attend, but such efforts were unsuccessful.  (*See* SAC ¶ 36;

2   Doc. No. 23, Exs. I and J.)  According to Plaintiffs, though, these orders were illegally

3   and fraudulently obtained.  (SAC ¶¶ 37, 38.)  Plaintiffs allege that Ms. Lisk and/or Ms.

4   Jemison submitted the order for signature "at some time before or after" the March 21,

5   2016 hearing, but when they did so, they knew they had not attempted to locate John and

6   Heather to discuss the exams, they had not told John and Heather about the exams or

7   given them an opportunity to object, and they did not tell John and Heather they could be

8   present for the exams.  (SAC ¶¶ 32, 37, 38.)  Plaintiffs claim Ms. Lisk and Ms. Jemison

9   did not request the order during the March 21, 2016 hearing (SAC ¶ 34), and John and

10  Heather only learned about the court orders when the juvenile case was over (SAC ¶ 33).

11        Plaintiffs allege that on March 22, 2016, one day after the court order was entered

12  authorizing their examinations, J.C.B. and A.J.B. were examined at Polinsky.  (SAC

13  ¶ 39.)  Plaintiffs claim these examinations and related procedures included a "full body

14  inspection including the children's genital and/or anal areas," a urine test, drawing blood,

15  and vaccinations.  (*Id.*)  Plaintiffs allege that there were no exigent circumstances

16  necessitating the examinations.  (SAC ¶ 40.)  Plaintiffs allege no one told John and

17  Heather when and where the examinations would occur (SAC ¶ 43), even though Ms.

18  Lisk and Ms. Jemison "had the responsibility" of doing so (SAC ¶¶ 21-22).  As a result,

19  Plaintiffs allege, John and Heather were excluded from the children's examinations and

20  not allowed to be in the nearby vicinity.  (SAC ¶ 43.)  Plaintiffs allege John and Heather

21  were not notified of the examinations until after they occurred.  (*Id.*)

22        Plaintiffs do not allege, however, that Ms. Lisk or Ms. Jemison personally

23  excluded John and Heather from the examinations.  (SAC ¶ 43; *see generally* SAC.)

24  Plaintiffs also do not allege that Ms. Lisk or Ms. Jemison conducted the medical

25  examinations at Polinsky or had any responsibility for the medical examinations.  (*See*

26  *generally* SAC.)  Rather, Plaintiffs broadly claim without factual support that Ms. Lisk

27  and Ms. Jemison "knew and agreed, and thereby conspired" that the children would be

28  subjected to medical examinations without parental consent or due process.  (SAC ¶ 51.)

1    Plaintiffs also allege that Ms. Lisk and Ms. Jemison allegedly conspired with the County

2    and other County employees, doctors, and medical providers to allow the medical

3    examinations.  (SAC ¶¶ 47, 51, 52, 53.)  But the only acts Plaintiffs allege that Ms. Lisk

4    and Ms. Jemison actually participated in, however, were Ms. Lisk failing to secure

5    parental consent for the exams during the removal (SAC ¶ 26) (even though a court order

6    authorizing the exams was entered thereafter); Ms. Lisk transporting the children to

7    Polinsky (SAC ¶ 28); and Ms. Lisk and Ms. Jemison allegedly misrepresenting and

8    concealing facts from the juvenile court that led the court to enter an order authorizing

9    the examinations.  (SAC ¶¶ 43, 44.)  Plaintiffs also claim without any foundation that Ms.

10   Lisk and Ms. Jemison were responsible for informing John and Heather of the location,

11   date, and time of the medical exams so that John and Heather could be present, but that

12   Ms. Lisk and Ms. Jemison failed to do so.  (SAC ¶¶ 20-22, 43.)  On those bases alone,

13   Plaintiffs allege that Ms. Lisk and Ms. Jemison violated Plaintiffs' Fourth and Fourteenth

14   Amendment rights to familial association.  (SAC ¶ 52.)

15        Plaintiffs allege the County is liable for violating their Fourth and Fourteenth

16   Amendment rights because the minors' medical examinations at Polinsky were

17   performed pursuant to the "County's policies, procedures, customs, and/or practices."

18   (SAC ¶ 45; *see id.* ¶¶ 47-49, 57 (a)-(f).)  Plaintiffs claim that despite the County's

19   February 2015 policy, the County permitted medical examinations at Polinsky after 2015

20   without parental consent or notice, without informing the parents of the examinations,

21   and without providing proper notice of a court order authorizing the examinations.  (SAC

22   ¶¶ 45, 47, 57, 59.)  Plaintiffs claim the 2015 policy does not protect the right of a parent

23   to be present at a court-ordered examination.  (SAC ¶ 61.)  Plaintiffs allege that the

24   County was on notice that parents have a right "to make important medical decisions for

25   their children" based on *Wallis v. Spencer*, 202 F.3d 1126 (2000) and *Greene v. Camreta*,

26   588 F.3d 5011 (9th Cir. 2009).  (SAC ¶ 49.)

27        Plaintiffs also claim that the County acted with deliberate indifference by failing to

28   train and supervise its employees to comply with the Constitution.  (SAC, ¶¶ 57 (e)-(f),

61.)  Plaintiffs cursorily allege that "no training or supervision" was given to County social workers regarding the 2015 policy (SAC ¶ 61), even though elsewhere Plaintiffs concede that "all County social workers were to receive and be trained on" the 2015 policy (SAC ¶ 17).

Plaintiffs allege no factual support for their broad conclusion that a County policy excluding parents from medical examinations or failure to train employees actually exists—rather, Plaintiffs' only factual allegations are about John and Heather being excluded from alleged examinations of J.C.B and A.J.B. in this singular, isolated case. (*See generally* SAC.)

As explained below, Plaintiffs fail to state a claim in their Second Amended Complaint, and their case should be dismissed with prejudice.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion tests whether a plaintiff's claims are legally sufficient.  *See* Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (2001).  When ruling on the motion, the court may consider matters that may be judicially noticed.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  "[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

A plaintiff's complaint must contain enough factual allegations to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Dismissal is appropriate when the complaint fails to allege a cognizable legal theory or sufficient facts to support

1   such a theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). A
2   court can dismiss a complaint without leave to amend if amending the complaint would
3   be futile. *Schmier v. United States Court of Appeals*, 279 F.3d 817, 825 (9th Cir. 2002).

**IV.   ARGUMENT**

   **A.   Plaintiff's First Cause of Action Against Ms. Lisk and Ms.**
   **Jemison Fails**

   **1.   Ms. Lisk and Ms. Jemison did not Violate Plaintiffs'**
   **Constitutional Rights**

9      The first inquiry in any § 1983 suit is to "identify the specific constitutional right
10   allegedly infringed." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Here, Plaintiffs
11   claim that Ms. Lisk and Ms. Jemison violated Plaintiffs' Fourth and Fourteenth
12   Amendment rights. (SAC ¶ 52.)

13      The Fourth Amendment prohibits unreasonable searches, which can include certain
14   medical examinations. *See Yin v. State of California*, 95 F.3d 864, 870 (1996). A
15   medical examination is reasonable under the Fourth Amendment if the government's
16   need to conduct the examination outweighs the privacy interests of the individual. *Id.*

17      Fourteenth Amendment substantive due process "forbids the government from
18   depriving a person of life, liberty, or property in such a way that 'shocks the conscience'
19   or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los*
20   *Angeles,* 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S.
21   739, 746 (1987)). To establish a substantive due process claim, "a plaintiff must, as a
22   threshold matter, show a government deprivation of life, liberty, or property." *Id.* While
23   the Fourteenth Amendment protects the right to family association, which "includes the
24   right of parents to make important medical decisions for their children, and of children to
25   have those decisions made by their parents rather than the state" (see *Wallis*, 202 F.3d at
26   1141), the right to familial association is not absolute. *Mueller v. Auker*, 700 F.3d 1180,
27   1186 (9th Cir. 2012). For example, neglectful or abusive parents may be constitutionally
28   separated from their children. *See Stanley v. Illinois,* 405 U.S. 645, 652 (1972).

Additionally, the state, acting in its role as *parens patriae,* may provide medical examinations to protect the health of children in its care.  *See Sangraal v. City & County of San Francisco,* No. C 11-04884 LB, 2013 WL 3187384, at *14–15 (N.D. Cal. June 21, 2013) ("When the state removes a child from parental custody, 'as parens patriae, [it] may order medical care for a child absent parental consent.'"), *aff'd sub nom.  Jones v. City & County of San Francisco*, 621 F. App'x 437 (9th Cir. 2015).

To prevail on a claim for violation of substantive due process, a plaintiff must show more than mere negligence or inadvertence—as noted above, the government's action must "shock[] the conscience." *Nunez*, 147 F.3d at 871.  "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  Rather, "conduct **intended to injure** in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849 (emphasis added); *see also Daniels v. Williams,* 474 U.S. 327, 328 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property"; *Baker*, 443 U.S. at 146 ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law").

### a)   Alleged Failure to Notify the Parents and Obtain Consent

Plaintiffs claim that Ms. Lisk and Ms. Jemison allegedly knew that J.C.B and A.J.B. would be subjected to medical examinations at Polinsky but failed to inform John and Heather or ask for their consent when their children were removed from their custody.  (SAC ¶¶ 26, 30.)  Plaintiffs additionally allege that Ms. Lisk and Ms. Jemison should have notified the parents and obtained consent before and during the detention hearing in juvenile court but again failed to do so.  (SAC ¶¶ 29, 31, 35.)

But Plaintiffs cannot establish that either Ms. Lisk or Ms. Jemison violated Plaintiffs' constitutional rights by failing to provide notice and obtain consent when, as here, the juvenile court entered an order authorizing the exams before they occurred.  *See*,

1   *e.g.*, *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018) ("the County is

2   required to…obtain parental consent **(or a court order)** in advance of performing the

3   Polinsky medical examinations…), *pet. for reh'g and reh'g en banc filed*, Nos. 16-56657

4   and 16-56740 (9th Cir. November 14, 2018) (emphasis added); *see also* SAC, ¶ 38

5   (alleging that "absent…a valid court order," the exams should not occur).

6       Here, the juvenile court entered individualized court orders authorizing the

7   children's examinations on March 21, 2016.  (SAC ¶ 36; Doc. No. 23, Exs. I and J.)

8   Thus parental consent was not required prior to conducting the exams on March 22, 2016.

9       Further, although John and Heather allege that Ms. Lisk and Ms. Jemison failed to

10  give them notice that the examinations would occur, the court orders themselves provided

11  such notice.  [Doc. No. 23, Exs. I and J; SAC ¶ 36 ("The Agency may conduct a pediatric

12  medical examination on the child…").]  The court also made a specific finding that the

13  parents had notice that the examinations would occur:

14      **Having found that** (1) the County of San Diego Health and Human Services
        Agency ("Agency") has made reasonable efforts to locate or contact a parent
15      and/or guardian of the above-named child to notify them of the Agency's
16      request for a medical examination and treatment of their child who is in the
        care of the Agency, but such efforts have been unsuccessful; or (2) **upon**
17      **request of the Agency, the child's parent or guardian has objected to the**
        **medical examination and treatment of the child**; and/or (3) **the Agency**
18      **has made reasonable efforts to schedule the examination of the child for**
        **a time when the parent or guardian is available to attend, but such**
19      **efforts have been unsuccessful, this court orders as follows:**
20      1. The Agency may conduct a pediatric medical examination on the child by
        a licensed physician while the child is in a facility operated by the Agency or
21      any licensed / certified foster home, approved kinship/non-related extended
22      family member home, or public or private institution. This examination may
        include blood and/or urine testing when recommended by a physician for
23      treatment and/or for diagnostic purposes or under the DEC Protocol. The
24      physician will document all observations made during the examination,  as
        well as any information provided by the child…."
25
26      [Doc. No. 23, Exs. I and J; SAC ¶ 36 (emphasis added).]

27      That is, the juvenile court thus made the explicit finding that either the social

28  workers attempted to find the parents but could not do so (not relevant here), that the

1  parents had objected to the medical exams, and/or that the Agency attempted to schedule

2  the exams when the parents were available but could not do so.  Thus the court found that

3  John and Heather had been provided general notice that the exams would occur.

4          This Court cannot adjudicate the validity of the state juvenile court's order, nor can

5  this Court hear a *de facto* appeal of the state juvenile court's order.  This Court has no

6  jurisdiction to do so pursuant to the *Rooker-Feldman* doctrine.  [*See* Doc. No. 17 (order

7  granting motion to dismiss FAC) at 7-11.]

8          The *Rooker-Feldman* doctrine "bars a district court from exercising jurisdiction not

9  only over an action explicitly styled as a direct appeal, but also over the 'de facto

10  equivalent' of such an appeal."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012);

11  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005).  "It is a

12  forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district

13  court complains of a legal wrong allegedly committed by the state court, and seeks relief

14  from the judgment of that court."  *Cooper*, 704 F.3d at 778 (quoting *Noel v. Hall*, 341

15  F.3d 1148, 1163 (9th Cir. 2003)).

16          Once it is determined that a de facto appeal exists, the federal court lacks

17  jurisdiction over all claims that were "inextricably intertwined" with an issue decided by

18  the state court.  *Noel*, 341 F.3d at 1156-58 (cited with approval by *Exxon Mobil Corp.*,

19  544 U.S. at 293).  "Where the district court must hold that the state court was wrong in

20  order to find in favor of the plaintiff, the issues presented to both courts are inextricably

21  intertwined."  *Doe & Assocs. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir.

22  2001); *see also Cooper*, 704 F.3d at 779 (claims are inextricably intertwined when "the

23  relief requested in the federal action would effectively…void [the state court's] ruling");

24  *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (A claim is "inextricably

25  intertwined" with a state court judgment if "the adjudication of the federal claims would

26  undercut the state ruling….").  "*Rooker–Feldman* bars any suit that seeks to disrupt or

27  'undo' a prior state-court judgment, regardless of whether the state-court proceeding

28  afforded the federal-court plaintiff a full and fair opportunity to litigate her claims." *Id.* at

901 (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002); and citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 478 (1983).

It is irrelevant if a plaintiff styles his or her claim as an alleged federal due process claim because whether a plaintiff was afforded due process prior to entry of the order is "inextricably intertwined" with the order itself.  *See Ragan v. Cty. of Humboldt Dep't of Health & Human Servs.*, No. 16-CV-05580-RS, 2017 WL 878083, at *4–5 (N.D. Cal. Mar. 6, 2017) (holding that the *Rooker-Feldman* doctrine barred the plaintiffs' claim that their due process rights were violated in the juvenile court when they allegedly "were never given a fair opportunity to retain and maintain custody" of their child); *see also Feldman*, 460 U.S. at 486 (explaining that "United States District Courts…do not have jurisdiction…over challenges to state court decisions…even if those challenges allege that the state court's action was unconstitutional").

There is an exception to the *Rooker-Feldman* doctrine when a plaintiff alleges the defendant committed extrinsic fraud.  *Kougasian v. TMSL*, 359 F.3d 1136, 1140 (9th Cir. 2004).  "Extrinsic fraud is conduct which prevents a party from having an opportunity to present his claim in court."  *Id.* (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)); *see also Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978). Examples include occasions when "a party was kept in ignorance of a lawsuit or was induced not to appear, a claim or defense was concealed from a party, and cases where the prevailing party obtained the judgment through coercion or duress."  *In re Lake*, 202 B.R. 751, 758 (B.A.P. 9th Cir. 1996) (citing discussion of cases in 8 E.B. Witkin, California Procedure, §§ 204–10, 215A (3d ed. 1988 & Supp.1996)); *see Kougasian*, 359 F.3d at 1140 (defendant submitted a false declaration to the court at the last minute and prevented plaintiff from questioning declarant).

"The 'essential characteristic' of extrinsic fraud is that the 'successful party has by inequitable conduct…lulled the other party into a false security, thus causing the latter to refrain from appearing in court or asserting legal rights' or 'from fully participating in the proceeding.'"  *Bribiesca v. Procopio, Cory, Hargreaves, and Savitch, LLP*, No. 3:16-cv-

01225-BEN-WVG, 2017 WL 87110, at *9 (S.D. Cal. Jan. 10, 2017), *aff'd* 704 F. App'x 668 (9th Cir. 2017) (quoting *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 292, 314 (1998)). Thus a plaintiff who alleges extrinsic fraud is "not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1141.

For that reason, if the plaintiff in federal court had the opportunity to challenge the state court's order in state court, "the extrinsic fraud exception to the *Rooker-Feldman* doctrine does not apply." [Doc. No. 17 (order dismissing FAC) at 9 (quoting *Bribiesca*, 2017 WL 87110 at *9 (citing *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859-60 (9th Cir. 2008)))].  If the alleged fraud could have been contested in the state proceedings, then it is only "intrinsic fraud" and cannot be challenged in a subsequent federal case. *See Green*, 577 F.2d at 1384 (intrinsic fraud "would have gone to the heart of the issues contested in the state court action"); *Wood*, 644 F.2d at 801 (no extrinsic fraud when the plaintiff "fully participated in the proceedings"); *Ragan*, 2017 WL 878083 at *4–5 (no extrinsic fraud when plaintiffs could have challenged defendants' actions in state court).

Here, Plaintiffs ask this Court to hold that the juvenile court's order authorizing the examinations is invalid.  (*E.g.*, SAC ¶¶ 39, 40.)  Plaintiffs allege John and Heather did not receive notice that the exams would occur (SAC ¶ 41), even though the juvenile court held that they did.  [Doc. No. 17 (order dismissing FAC) at 9 ("Plaintiff's allegations that the Order is invalid on its face is a de facto appeal of the juvenile court's order.  The Order specifically found that the Parents had notice that the medical examinations would occur.")]  The juvenile case has been closed since September 2016, prior to Plaintiffs filing a complaint in this case.[2]  [Doc. No. 23, Ex. G (juvenile court order) at 1; *id.* Ex. H (Court of Appeal opinion) at 3 and n.3; *see* SAC ¶¶ 14, 33.]  Plaintiffs' claim is thus barred by the *Rooker-Feldman* doctrine.  [Doc. No. 17 (order dismissing FAC) at 7-11.]

_____

[2] Even though the Court's March 21, 2016 orders authorizing the medical exams were not the final orders in the juvenile case, the *Rooker-Feldman* doctrine applies to interlocutory orders and non-final judgments issued by a state court.  *Napolitano*, *supra*, 252 F.3d at 1030 (declining to review state court ruling on motion to quash on the basis of *Rooker-Feldman* doctrine).

1    Plaintiffs' allegations do not fall within the extrinsic fraud exception.  In this

2  Court's order dismissing the FAC, the Court gave Plaintiffs leave to amend to assert

3  allegations that the extrinsic fraud exception applies.  [Doc. No. 17 (order dismissing

4  FAC) at 11.]  The Court explained that although Plaintiffs in their FAC alleged that Ms.

5  Lisk and Ms. Jemison misrepresented facts to the juvenile court regarding their efforts to

6  obtain John and Heather's consent and schedule the examinations when John and Heather

7  could attend, Plaintiffs' allegations were vague and insufficient—they failed to "specify

8  the exculpatory facts that were not disclosed."  [*Id.* at 10.]  Further, it was not clear when

9  John and Heather became aware of the court order or the alleged fraud, and whether John

10  and Heather had another opportunity to challenge the alleged fraud in state court.  [*Id.*]

11    In Plaintiffs' SAC, they have not remedied the defects of their FAC.  First,

12  Plaintiffs continue to complain broadly that Ms. Lisk and Ms. Jemison made

13  misrepresentations to the Court regarding their efforts to notify John and Heather of the

14  exams and obtain their consent (SAC ¶ 38), but Plaintiffs still do not allege any specifics

15  of these alleged misrepresentations (*id.*).  Plaintiffs simply continue to make their vague

16  allegation that "at some time before or after the March 21, 2016 detention hearing," Ms.

17  Lisk and Ms. Jemison "submitted a request" that the court enter the order, even though

18  they knew they had not attempted to notify John and Heather or obtain their consent to

19  the examinations.  (SAC ¶¶ 35, 37, 38; *compare* Doc. No. 12 (FAC) at ¶¶ 27, 29, 30.)

20  Plaintiffs still do not allege which defendant—Ms. Lisk or Ms. Jemison—made the

21  alleged misrepresentations or how they did so, except that they "misrepresented and/or

22  concealed" their efforts from the court.  (SAC ¶ 38.)  It is unclear if Plaintiffs allege Ms.

23  Lisk or Ms. Jemison made affirmative misrepresentations (and if so, when or how), or if

24  they simply submitted an order for the court to sign.  If the latter, Plaintiffs do not explain

25  how Ms. Lisk or Ms. Jemison should be liable for the court making its own findings.

26  Plaintiffs do not explain how Ms. Lisk and Ms. Jemison's alleged actions rise to the level

27  of "deliberate indifference" to Plaintiffs' rights.  Plaintiffs' allegations that Ms. Lisk and

28  Ms. Jemison made misrepresentations to the court do not state a claim.

1   Further, Plaintiffs had ample opportunity to raise their current claims regarding the

2   medical examinations in the juvenile proceeding, which means Ms. Lisk and Ms.

3   Jemison's alleged misrepresentations were at most intrinsic fraud.  There were three other

4   hearings in the juvenile court after the initial March 21, 2016 detention hearing.  [Doc.

5   No. 23, Ex. E (May 17, 2016 minute order); *id.* Ex. F (May 27, 2016 minute order); *id.*

6   Ex. G (September 29, 2016 minute order).]  John, Heather, and the children were all

7   represented by counsel at the May hearings [Doc. No. 23, Ex. E at 1; *id.* Ex. F at 1], and

8   all of them but Heather were represented by counsel at the September hearing [*id.*, Ex. G

9   at 1].  John and Heather even appealed various aspects of the juvenile court ruling, and

10  they were represented by counsel in the appeal.  [*Id.*, Ex. H.]  Additionally, in juvenile

11  proceedings, the parties are entitled to raise a due process challenge to court orders and

12  seek to modify them or set them aside at any time under Welfare and Institutions Code

13  § 388.  Welf. & Inst. Code § 388; *Ansley v. Superior Court*, 185 Cal.App.3d 477, 484-

14  488 (1986) (holding that a party can raise a due process challenge to an order under

15  Section 388).  Thus John and Heather had ample opportunity in the state court to raise

16  any concerns they had about the orders authorizing the medical exams.

17  Plaintiffs claim they only learned about the juvenile court's orders authorizing the

18  exams after the exams occurred and after the juvenile court dependency proceedings were

19  terminated.  (SAC ¶ 33.)  But Plaintiffs do not and cannot allege that Ms. Lisk and Ms.

20  Jemison were responsible for John and Heather's purported lack of knowledge.  Rather,

21  the clerk of the juvenile court is required to serve orders of the court on the petitioner, the

22  minors (or counsel), and the parents (or counsel) within three judicial days of their

23  issuance.  Cal. Welf. & Inst. Code § 248.5.  And "in the absence of an affirmative

24  showing to the contrary, [the court] presume[s] that the juvenile court clerk performed the

25  official duty to give notice."  *In re Jason J.*, 233 Cal.App.3d 710, 717 (1991),

26  disapproved of on other grounds by *People v. Welch*, 5 Cal.4th 228 (1993).  This Court

27  should assume that John and Heather received proper notice of the court orders

28  authorizing the examinations.  They then had ample opportunity to challenge those orders

1    in the juvenile court proceedings.  Their challenge in this Court to the state juvenile

2    court's orders is barred by the *Rooker-Feldman* doctrine.

3         Plaintiffs also cannot demonstrate that Ms. Lisk and Ms. Jemison violated

4    Plaintiffs' constitutional rights merely by alleging that Ms. Lisk and Ms. Jemison failed

5    to follow the February 2015 internal County policy.  *See Devereaux v. Perez*, 218 F.3d

6    1045, 1056 (9th Cir. 2000) (internal policy manuals "do not constitute decisional law

7    giving rise to a constitutional duty under § 1983"), *aff'd on reh'g, Devereaux v. Abbey*,

8    263 F.3d 1070 (9th Cir. 2001); *James v. United States Parole Comm'n*, 159 F.3d 1200,

9    1205 (9th Cir. 1998) ("it is well-settled that internal policy manuals do not generally

10   create due process rights in others"), (citing *Schweiker v. Hansen*, 450 U.S. 785, 789

11   (1981)) *cert. denied*, 525 U.S. 1186 (1999); *Smith v. Freland*, 954 F. 2d 343, 347-348

12   (6th Cir. 1992) ("To hold that [counties or] cities with strict policies commit more

13   constitutional violations than those with lax policies would be an unwarranted extension

14   of the law, as well as a violation of common sense.")  Plaintiffs' claim fails.

15                    **b)    Alleged Failure to Provide Notice at Detention Hearings**

16        Plaintiffs allege that Ms. Lisk and Ms. Jemison failed to include information about

17   John and Heather's refusal to consent in their report submitted to the juvenile court and

18   failed to raise the issue at the detention hearing.  (SAC ¶ 30.)  But Ms. Lisk and Ms.

19   Jemison's alleged failure to include information in the report was only contrary to County

20   policy, not a constitutional violation.  *Devereaux*, 218 F.3d at 1056.  To the extent

21   Plaintiffs purport to make a due process challenge on this basis, such challenge is barred

22   by the *Rooker-Feldman* doctrine for the same reasons as set forth above.

23                    **c)    Alleged Conduct of Exams Outside of Parental Presence**

24        Plaintiffs allege the children's medical examinations were conducted outside of

25   John and Heather's presence.  (SAC ¶¶ 39, 42, 43.)  This Court previously held "the

26   Parents had a constitutional right to be present at the medical examinations, and the

27   minor children had the corresponding right to the love, comfort, and reassurance of their

28   parents while they are undergoing medical procedures, including examinations –

1    particularly those that are invasive or upsetting." [Doc. No. 17 (order dismissing FAC) at

2    13 (internal quotation marks, ellipses, and citations omitted).] But this Court also held

3    that Plaintiffs' allegations in the FAC were unclear as to whether Plaintiffs' rights were

4    actually violated because Plaintiffs did not allege which government officials excluded

5    John and Heather, and because Plaintiffs' allegations about Ms. Lisk and Ms. Jemison's

6    role in the examinations were too vague to state a claim against them. [*Id.* at 13-14.]

7         Plaintiffs again fail to remedy these defects in their SAC. Plaintiffs have now

8    cursorily alleged that Ms. Lisk and Ms. Jemison "knew they had the responsibility of"

9    telling John and Heather they could be present during the examinations, and for telling

10   them the location, date, and time of the examinations, but that they failed to do so. (SAC

11   ¶¶ 21-22, 24, 32.) But Plaintiffs allege no facts about Ms. Lisk and Ms. Jemison's job

12   duties that support Plaintiffs' conclusion that they had such a responsibility. Indeed,

13   Plaintiff's scant factual allegations about Ms. Lisk and Ms. Jemison's actual conduct in

14   this case lead to the opposite conclusion. Ms. Lisk and Ms. Jemison were social workers

15   (SAC ¶ 47) who allegedly applied for a warrant to remove the children from their parents,

16   then Ms. Lisk (under Ms. Jemison's supervision) removed the children from the home

17   (SAC ¶¶ 25-26). Ms. Lisk then took the children to Polinsky, where they were admitted.

18   (SAC ¶ 28.) After that, Ms. Lisk and Ms. Jemison wrote a report for the court and

19   requested an order authorizing the medical examinations. (SAC ¶¶ 30, 35.) It is

20   implausible that while they were conducting all of these tasks outside of Polinsky, they

21   were also responsible for scheduling medical examinations inside of Polinsky.

22        The County's 2015 policy states that during the removal of a child, the social

23   worker will advise the parent that they may be present at the exams, and if the parent

24   chooses to do so, the social worker will provide the contact information for Polinsky.

25   (RJN Ex. A at 3.) If the parent does not indicate his or her preference, then "[Polinsky]

26   intake" will contact the parent. (*Id.*) Plaintiffs do not allege that Ms. Lisk and Ms.

27   Jemison worked at Polinsky intake, nor is it plausible that they did so when they were the

28   social workers conducting the removal. Plaintiff's conclusory allegations that Ms. Lisk

1  and Ms. Jemison were responsible for notifying John and Heather about the details of the

2  examination are insufficient to state a claim on this basis.

3      Plaintiffs allege that simply because Ms. Lisk and Ms. Jemison did not tell John

4  and Heather the location, date, and time of the exams, John and Heather were thus

5  "completely excluded" from the children's exams.  (SAC ¶ 43.)  This argument is also

6  not plausible.  The court orders authorizing the exams held that John and Heather had

7  already received general notice that the exams would occur, as discussed above.  Thus

8  John and Heather were aware the exams were impending.  They do not allege that they

9  then objected to the exams or requested notice of when they would occur.  (*See generally*

10 SAC.)  And no court has held that, once parents have received general notice that the

11 exams will occur, the parents have a constitutional right to notification of precisely when

12 and where the exams will occur.  John and Heather were not physically excluded from

13 the exams in this case—rather, they allege they could not attend simply because they did

14 not know when they would take place.  This does not rise to the level of *Greene*, 588

15 F.3d at 1019, in which a social worker ordered medical center staff to instruct plaintiff to

16 leave the premises.  John and Heather do not allege they attempted to contact Polinsky

17 about the exams or schedule them when they could be present.  In fact, a Polinsky record

18 indicates Heather was supposed to attend exams initially scheduled for March 20, 2016,

19 but she canceled.  [Doc. No. 23, Ex. K.]  Ms. Lisk and Ms. Jemison's alleged actions of

20 failing to inform John and Heather of the details of the examinations also do not rise to

21 the level of intentional deliberate indifference.  Plaintiffs' allegations fail to state a claim.

22          **d)      Alleged Conspiracy to Conduct the Polinsky Examinations**

23      Plaintiffs claim that Ms. Lisk and Ms. Jemison "knew and agreed" that the children

24 would be examined (SAC ¶ 51), and that Ms. Lisk and Ms. Jemison collaborated and

25 conspired with other County employees to allow the examinations (SAC ¶ 47).  As this

26 Court already held, these scant allegations do not give rise to liability for violating the

27 children's Fourth Amendment rights.  [Doc. No. 17 (order dismissing FAC) at 14-15.]

28 / / /

1    Ms. Lisk and Ms. Jemison could not have violated J.C.B. and A.J.B.'s Fourth

2    Amendment rights to be free from unreasonable searches because Ms. Lisk and Ms.

3    Jemison did not conduct the medical examinations, nor did they have any responsibility

4    for these medical examinations.  (*See generally* SAC.)  Plaintiffs' allegation that Ms. Lisk

5    and Ms. Jemison "knew and agreed" that the medical examinations would be conducted,

6    and therefore collaborated or conspired with medical providers who did conduct the

7    examinations (SAC ¶¶ 47, 51) does not state a claim against Ms. Lisk and Ms. Jemison.

8         The bare assertion of a conspiracy is a legal conclusion and, as such, is not entitled

9    to the assumption of truth in the context of a motion to dismiss.  *Iqbal*, 556 U.S. at 679-

10   80 *Twombly*, 550 U.S. at 551, 556; *see also Lacey v. Maricopa County* 693 F.3d 896,

11   935-37 (9th Cir. 2012) (en banc) (allegations of conspiracy must satisfy *Iqbal* pleading

12   standards).  A plaintiff must allege "plausible grounds to infer an agreement."  *Twombly*,

13   550 U.S. at 556.  To state a conspiracy claim under § 1983, a plaintiff must allege an

14   "express or implied agreement among the defendant officers to deprive [plaintiffs] of

15   [their] constitutional rights."  *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991);

16   *see Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).  "The defendants must have, by

17   some concerted action, intended to accomplish some unlawful objective for the purpose

18   of harming another which results in damage."  *Mendocino Envtl. Ctr. v. Mendocino Cty.*,

19   192 F.3d 1283, 1301 (9th Cir. 1999) (internal brackets, quotation marks, and citations

20   omitted).  "To be liable, each participant in the conspiracy need not know the exact

21   details of the plan, but each participant must at least share the common objective of the

22   conspiracy."  *Id.* (internal citations omitted).

23        "Mere acquiescence" of one party to another party's demands is insufficient to

24   show a conspiracy.  *Fox v. Cty. of Tulare*, No. 1:11-CV-O520 AWI SMS, 2014 WL

25   3687735, at *12 (E.D. Cal. July 24, 2014) (citing *Fonda v. Gray,* 707 F.2.d 435, 438 (9th

26   Cir.1983)), *aff'd, Fox v. Cty. of Tulare*, 672 F. App'x 767, 768 (9th Cir. 2017).  Rather, a

27   plaintiff must show an actual meeting of the minds to accomplish a constitutional

28   violation.  *Id.* (internal citations omitted).

1    Further, pursuant to the intracorporate conspiracy doctrine, a plaintiff cannot state

2  a conspiracy claim in a §1983 action premised on the conduct of a single municipality

3  and its employees because they comprise one body incapable of conspiring with

4  themselves.  *See Rabkin v. Dean*, 856 F. Supp. 543, 552 (N.D. Cal. 1994); *Thompson v.*

5  *City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997); accord *Hilliard v. Ferguson*,

6  30 F.3d 649, 653 (5th Cir. 1994); *Hull v. Cuyahoga Valley Joint Vocation*, 926 F.2d 505,

7  509-510 (6th Cir. 1991); *Buschi v. Kirven*, 775 F.2d 1240, 1251-52 (4th Cir. 1985); *Runs*

8  *After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985).

9    Here, Plaintiffs allege no facts to support their conclusory allegation that Ms. Lisk

10 and Ms. Jemison "knew and agreed, and thereby conspired" to allow the minors to

11 undergo medical examinations.  The only acts that Ms. Lisk and Ms. Jemison allegedly

12 conducted were Ms. Lisk failing to secure parental consent for the exams during the

13 removal (SAC ¶ 26); Ms. Lisk transporting the children to Polinsky (SAC ¶ 28); Ms. Lisk

14 and Ms. Jemison allegedly misrepresenting and concealing facts from the juvenile court

15 that led the court to enter an order authorizing the examinations (SAC ¶¶ 43, 44); and Ms.

16 Lisk and Ms. Jemison failing to inform John and Heather of the location, date, and time

17 of the medical exams (SAC ¶¶ 20-22, 43).  Their mere knowledge that the exams would

18 occur does not make them "integral participants…in the unconstitutional search of minor

19 Plaintiffs." [Doc. No. 17 (order dismissing FAC) at 15.]  Further, Ms. Lisk and Ms.

20 Jemison were both County social workers (SAC ¶¶ 9, 10, 47), and they could not have

21 conspired with the County and other County employees to violate the children's rights.

22       **2.    Ms. Lisk and Ms. Jemison are Entitled to Qualified Immunity**

23    Even if Ms. Lisk and Ms. Jemison violated Plaintiffs' constitutional rights—which

24 they did not—they are entitled to qualified immunity.  Social workers are entitled to

25 qualified immunity in § 1983 cases unless the alleged facts show a violation of a

26 constitutional right that was clearly established at the time of the alleged violation.

27 *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly*, 137 S. Ct. 548, 551

28 (2017); *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (2017).  A constitutional right

1   is considered "clearly established" only when controlling legal precedent would have

2   apprised the defendants that they were violating a constitutional right when their actions

3   allegedly occurred.  *Kisela*, 138 S. Ct. at 1152 *White*, 137 S. Ct. at 551 *S.B.*, 864 F.3d at

4   1015.  Courts can determine as an initial matter if the purported constitutional right was

5   clearly established by law.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also*

6   *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016).

7        Whether a right was clearly established at the time of the alleged violation must be

8   analyzed "in light of the specific context of the case, not as a broad general proposition."

9   *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *see Kisela*, 138 S. Ct. at 1152.  "[C]learly

10  established law must be 'particularized' to the facts of the case."  *White*, 137 S. Ct. at

11  552.  A government official is entitled to qualified immunity unless the contours of the

12  constitutional right were so clearly established that "any reasonable official in the

13  defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*,

14  134 S. Ct. 2012, 2023 (2014)).

15       Plaintiffs have not cited and cannot cite any binding legal precedent that would

16  have apprised Ms. Lisk and Ms. Jemison that their limited actions in this case violated

17  Plaintiffs' constitutional rights.  Plaintiffs claim that parents have a right "to make

18  important medical decisions for their children" based on *Wallis v. Spencer*, 202 F.3d

19  1126 (2000) and "cases thereafter," including *Mann v. Cty. of San Diego*, 907 F.3d 1154

20  (9th Cir. 2018).  (SAC ¶ 48.)  Plaintiffs claim that right means that medical exams cannot

21  occur without parental consent or a "valid court order."  (*Id.*)  Plaintiffs allege that right

22  means that parents can be with their children while they are receiving medical attention,

23  even if the exams are conducted pursuant to court order.  (SAC ¶ 49 (citing *Greene v.*

24  *Camreta*, 588 F.3d 5011 (9th Cir. 2009).)  Plaintiffs allege that the right of parents to

25  make medical decisions for their children and be present during medical examinations

26  was "clearly established" as of 2000, the date of the *Wallis* decision.  (SAC ¶ 49.)

27       But Plaintiffs' own allegations are that the medical examinations in this case were

28  constitutional if conducted pursuant to a valid court order.  (SAC ¶ 48.)  As explained

1   above, Plaintiffs cannot in this action challenge the validity of the state court orders.

2   Thus Ms. Lisk and Ms. Jemison are entitled to qualified immunity on this issue.

3        Further, although Plaintiffs allege that parents have a constitutional right to be with

4   their children while they are receiving medical attention, unlike *Greene*, Plaintiffs do not

5   allege that Ms. Lisk or Ms. Jemison barred John and Heather from being at the medical

6   examinations. *See Greene*, 588 F.3d at 1019. Plaintiffs do not allege that Ms. Lisk or

7   Ms. Jemison attended the examinations, conducted the examinations, or participated in

8   any respect in the medical examinations. Plaintiffs rely solely on their theory that Ms.

9   Lisk and Ms. Jemison conspired to allow the examinations to be conducted. Further, as

10  of March 2016, there was (and still is) no case holding that social workers who conducted

11  the removal of a child and transported him or her to Polinsky have an affirmative

12  obligation to tell the parents the specific date, time, and location of the examination.

13  Plaintiffs thus do not and cannot cite a case in which social workers "acting under similar

14  circumstances as [the defendants] w[ere] held to have violated" constitutional rights.

15  *White*, 137 S. Ct. at 552; *S.B.*, 864 at 1015-16 (internal citations omitted).

16       *Wallis* is distinguishable. *Wallis* involved minors who were removed from their

17  parents without a court order. *Wallis*, 202 F.3d at 1138. The minors in *Wallis* were then

18  subjected to medical procedures "involving internal body cavity examinations…vaginal

19  and anal," as well as photographs of the inside and outside of these body cavities. *Wallis*,

20  202 F.3d at 1135. There are no such allegations in the present case, and certainly not

21  against Ms. Lisk and Ms. Jemison. *Swartwood v. County of San Diego,* 84 F. Supp. 3d

22  1093 (S.D. Cal. 2014) is also distinguishable and irrelevant to Ms. Lisk and Ms. Jemison.

23  In *Swartwood*, there were no individualized court orders, and the parents affirmatively

24  were not allowed to attend the medical examinations. *Swartwood*, 84 F. Supp. 3d at

25  1101, 1116. District court opinions cannot clearly establish constitutional rights in any

26  event. *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012).

27       "[C]learly established law must be 'particularized' to the facts of the case." *White*,

28  137 S. Ct. at 552. Plaintiffs' cited cases could not have apprised Ms. Lisk or Ms. Jemison

1   that they were violating a constitutional right when they were not involved in the medical

2   examinations and did not personally exclude the parents from attending them.  Ms. Lisk

3   and Ms. Jemison are therefore entitled to qualified immunity.

### 3.   Plaintiffs do not State a Claim for Punitive Damages

5   "[P]unitive damages may be assessed under 42 U.S.C. § 1983 when a defendant's

6   conduct is shown to be motivated by evil motive or intent, or if it involves reckless or

7   callous indifference to the federally protected rights of others.  *Fair Housing of Marin v.*

8   *Combs*, 285 F.3d 899, 916 (9th Cir. 2002) (internal citations omitted).  Plaintiffs do not

9   plausibly allege any conduct of Ms. Lisk and Ms. Jemison that indicates an evil motive or

10   intent, or a reckless or callous indifference to Plaintiffs' constitutional rights.  Rather, in

11   conclusory fashion, Plaintiffs only allege the legal standard for punitive damages,

12   claiming that Ms. Lisk and Ms. Jemison's conduct was "done with malice" or conscious

13   disregard for Plaintiffs' rights.  (SAC ¶ 55.)  These legal conclusions are insufficient to

14   support Plaintiffs' request for punitive damages, which should be dismissed.

### B.   Plaintiffs' Second Cause of Action Against the County Fails

16   This Court held that Plaintiffs' cursory and conflicting allegations in the FAC did

17   not establish municipal liability.  [Doc. No. 17 (order dismissing FAC) at 15-20.]

18   Plaintiffs have not bolstered their claim in the SAC.  Plaintiffs still allege that the County

19   developed a written policy in February 2015 to "provide staff with new and updated

20   information regarding consent for medical treatment for children in CWS custody,

21   including intake medical examinations at PCC, the rights of parents to be present at the

22   intake medical examinations, and the new consent forms that should be used."  (SAC ¶¶

23   17, 60.)  But Plaintiffs also still allege that the County policy was insufficient, and the

24   County should have implemented even more policies to ensure the February 2015 policy

25   was followed.  (SAC ¶¶ 61-63.)  Plaintiffs allege the County's form for detention reports

26   was deficient because social workers are not prompted to explain their efforts to obtain

27   consent.  (SAC ¶ 61.)  Plaintiffs further allege the County somehow had other policies

28   that conflicted with the 2015 policy and *permitted* exams of minors without parental

1    consent or a valid court order and without parental presence, and that County employees

2    were not trained to avoid such constitutional violations.  (SAC ¶¶ 57 (a)-(e), 59.)

3         It is well-settled law that the County cannot be held responsible for the acts of its

4    employees under a respondeat superior theory of liability.  *See Board of County*

5    *Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton, Ohio v. Harris*, 489

6    U.S. 378, 385 (1989); *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658,

7    691 (1978).  Rather, the County can only be liable under §1983 where it has an official

8    policy or a longstanding custom known by policymakers that causes a constitutional

9    violation.  *Monell*, 436 U.S. at 691; *Canton,* 489 U.S. at 389-391, 397.

10        Municipal liability cannot be based on an isolated incident.  *Davis v. City of*

11   *Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989) ("plaintiff cannot prove the existence

12   of a *municipal* policy or custom based solely on the occurrence of a single incident of

13   unconstitutional action by a non-policymaking employee."); *see McDade v. West*, 223

14   F.3d 1135, 1141 (9th Cir. 2000) ("Only if a plaintiff shows that his injury resulted from a

15   'permanent and well settled' practice may liability attach for injury resulting from a local

16   government custom.") (quoting *Thompson v. City of L.A.*, 885 F.2d 1439, 1444 (9th Cir.

17   1989)).  "Liability for improper custom may not be predicated on isolated or sporadic

18   incident; it must be founded upon practices of sufficient duration, frequency and

19   consistency that the conduct has become a traditional method of carrying out policy."

20   *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal citations omitted).

21        Similarly, a generalized allegation that the County failed to train its employees

22   adequately does not state a constitutional claim.  *Canton,* 489 U.S. at 378; *Dougherty v.*

23   *City of Covina*, 654 F.3d 892, 901 (9th Cir. 2011).  "A municipality's culpability for a

24   deprivation of rights is at its most tenuous where a claim turns on a failure to train."

25   *Connick v. Thompson* (2011) 563 U.S. 51, 61.  For liability under §1983 for failure to

26   train, a municipality's "failure to train its employees in a relevant respect must amount to

27   '**deliberate indifference** to the rights of persons with whom the [untrained employees]

28   come into contact.'"  *Id.*, citing *Canton*, 489 U.S. at 388 (emphasis added).  "Deliberate

indifference is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 563 U.S. at 61; *Flores v. County of L.A.,* 758 F.3d 1154, 1158 *n.* 10 (9th Cir. 2014). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick,* 563 U.S. at 62; *Flores*, 758 F.3d at 1159. This is because "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62. Finally, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *Canton,* 489 U.S. at 391. "Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County." *Merritt v. Cty. of L.A.,* 875 F.2d 765 (9th Cir. 1989), superseded by statute on other grounds as stated in *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1199 (2014); *see also Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 931–32 (9th Cir. 2001).

Here, Plaintiffs fail to allege a *Monell* or a *Canton* theory of municipal liability. Plaintiffs largely recite legal standards without factual support. (SAC ¶¶ 62-67.) Plaintiffs do not allege any facts supporting their allegation that the County failed to implement more policies to ensure the February 2015 policy was followed, nor do Plaintiffs explain why this would have been necessary when the February 2015 policy already existed. For the same reason, Plaintiffs' allegation the County's template for detention reports did not prompt social workers to complete information regarding whether the parent signed the consent form (SAC ¶ 61) is irrelevant—Plaintiffs do not explain why that would be necessary in light of the 2015 policy. Nor does this alleged omission rise to the level of deliberate indifference. [*See* Doc. No. 17 (order dismissing FAC) at 17.]

Plaintiffs also do not allege any facts that the County's supposed policy of *permitting* unconstitutional medical examinations (in spite of the 2015 policy) exists

other than the allegations in this case regarding the purported examinations of J.C.B. and A.J.B.  A singular occurrence, or the mistakes of a few employees, cannot establish municipal liability.  Plaintiffs cite *Mann v. Cty. of San Diego*, 907 F.3d 1154 (9th Cir. 2018) (SAC ¶ 49), but that case addressed alleged conduct prior to implementation of the County's 2015 policy and does not support Plaintiffs' allegations of a policy in this case.

With regard to Plaintiffs' failure to train allegations, Plaintiffs concede that all social workers "were to receive and be trained on" the February 2015 policy.  (SAC ¶ 17.)  Plaintiffs allege no facts to support their cursory allegations that this training did not actually take place, nor do they allege facts to establish deliberate indifference—Plaintiffs simply claim that the County acted with "deliberate indifference."  (SAC ¶¶ 45, 57 (e).)

Further, Plaintiffs contradictorily allege that the 2015 policy does address parents' rights to be at the examinations (SAC ¶ 17) but that it does not address parents' right if a court order has been entered (SAC ¶ 61).  The policy itself does not distinguish between the circumstances of a court order being entered or not—it simply allows for parental presence, which covers both scenarios.  (RJN Ex. A at 3.)  Plaintiffs have not alleged any basis for municipal liability.  This Court should dismiss the County.

## V.   <u>CONCLUSION</u>

Plaintiffs' claims against Ms. Lisk and Ms. Jemison should be dismissed because Plaintiffs make no factual allegations against Ms. Lisk and Ms. Jemison rising to the level of a constitutional violation, and Ms. Lisk and Ms. Jemison are entitled to qualified immunity.  Plaintiffs' claim against the County should be dismissed because Plaintiffs allege no only an isolated occurrence of allegedly unconstitutional conduct, which is insufficient to state municipal liability.

DATED: December 21, 2018          THOMAS E. MONTGOMERY, County Counsel

By: s/*Christina Snider*
    Christina Snider, Senior Deputy
Attorney for Defendants County of San Diego,
Benita Jemison, and Jennifer Lisk
E-mail: christina.snider@sdcounty.ca.gov