Donnie R. Cox, SBN 137950
Law Office of Donnie R. Cox
402 North Nevada Street
Oceanside, CA 92054-2025
Telephone (760) 400-0263, Facsimile (760) 400-0269
drc@drcoxlaw.com

Paul W. Leehey, SBN 92009
Law Office of Paul W. Leehey
250 E. Fig Street, Ste. 501
Fallbrook, CA 92028
Telephone (760) 723-0711, Facsimile (760) 723-6533
law@leehey.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

JOHN BENAVIDEZ, HEATHER BENAVIDEZ, J.C.B. a minor and A.J.B. a minor by and through their Guardian Ad Litem, DIANA BENAVIDEZ,

　　　　　　　Plaintiffs,

　　vs.

COUNTY OF SAN DIEGO; SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY, POLINKSY CHILDREN'S CENTER; JENNIFER LISK, BENITA JEMISON, and DOES 1 through 50, inclusive,

　　　　　　　Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  18-cv-0558-CAB(AGS)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**Date: January 25, 2019**

Honorable Cathy Ann Bencivengo

**JURY TRIAL REQUESTED**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. PROCEDURAL HISTORY .................................................................2

III. SUMMARY OF ALLEGATIONS .......................................................4

IV. MOTION TO DISMISS DECIDED ON PLEADINGS ................................9

V. PLAINTIFFS HAVE STATED A CLAIM AGAINST DEFENDANTS
LISK AND JEMISON ...........................................................................10

    A.    Plaintiffs Have Sufficiently Alleged the Elements of
Their Claim ...................................................................................10

        1.    Plaintiffs Have Alleged that Lisk and Jemison
Procured the Order Through Fraud ...........................................11

        2.    Plaintiffs Have Alleged a Fourth Amendment Claim
By the Minors ...........................................................................14

        3.    Plaintiffs Have Alleged Fourteenth Amendment
Violations ..................................................................................15

    B.    This Action is Not Preempted by the *Rooker-Feldman*
Doctrine .......................................................................................17

    C.    Defendants Lisk and Jemison Are Not Protected By
Qualified Immunity ......................................................................19

    D.    Plaintiffs Have Adequately Alleged Punitive Damages ...................20

VI. PLAINTIFFS HAVE STATED A CLAIM AGAINST THE COUNTY .....21

VII. CONCLUSION ...............................................................................24

Case No. 18-cv-0558-CAB-AGS

# TABLE OF AUTHORITIES

**Case Law**

*Ansley v. Superior Court*, 185 Cal.App.3d 477 (1986) ...........................14

*Arpin v. Santa Clara Valley Tranp. Agency*, 261 F.3d 912 (9th Cir.2001).............10

*Board of the County Commissioners v. Brown*, 520 U.S. 397, 407 (1997).............22

*Boyd v. Benton County*, 374 F.3d 773 (9th Cir.2004) ...........................15

*Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336 (9th Cir.1996)................................9

*D. K. ex rel. G.M. v. Solano County Office of Educ.*,
    667 F.Supp.2d 1184 (ED Cal.2009) ........................................ 9-10

*Devereaux v. Perez*, 218 F.3d 1045 (9th Cir.2000) .........................13

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir.2003) ....................16

*Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir.2013) ............................ 16-17

*Gibson v. United States*, 781 F.2d 1334 (9th Cir.1986) .........................10

*Greene v. Camreta*, 588 F.3d 1011 (9th Cir.2009).........................13, 19

*Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir.2017).................. 13, 19-20

*Johnson v. State of Cal.*, 207 F.3d 650 (9th Cir.2000) ...........................9

*Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018)........... 2, 8, 15-16, 21

*Manufactured Home Communities, Inc. v. City of San Jose*,
    420 F.3d 1022 (9th Cir.2005) ........................................17

*May v. Anderson*, 345 U.S. 528 (1953) .......................................15

*Meyer v. Nebraska*, 262 U.S. 390 (1923) .......................................15

*Milligan v. City of Chandler*, 135 Fed.Appx. 7 (9th Cir.2005) ...............................18

*Monell v. Dept. of Social Services of City of New York*,
    436 U.S. 658 (1978)...............................................21

*Morgan v. Woessner*, 997 F.2d 1244 (9th Cir.1993) ...............................................20

*Noel v. Hall*, 341 F.3d 1148 (9th Cir.2003) ...............................................17

*Olga C. v. County of Santa Clara*, 701 Fed.Appx. 551 (9th Cir.2017)...................18

*Parkes v. County of San Diego*, 345 F.Supp.2d 1071 (S.D.Cal.2004)........14, 16, 21

*Reynolds v. County of San Diego*, 224 F.Supp.3d 1034 (S.D.Cal.2016). ...14, 16, 21

*In re Sheila B.,* 19 Cal. App 4th 187 (1993) ...............................................18

*Skinner v. Oklahoma*, 316 U.S. 535 (1942) ...............................................15

*Swartwood* v *County of San Diego,* 84 F.Supp.3d 1093 (S.D. Cal. 2014)....7, 14, 21

*Troxel v. Granville*, 530 U.S. 57 (2000) ...............................................16

*Wallis v. Spencer*, 202 F.3d 1126 (2000)...............................................7, 14, 16

**Statutory Authority**

42 U.S.C. §1983   ...............................................10

**Other Authority**

Ninth Circuit Model Jury Instruction 5.5...............................................20

Plaintiffs John Benavidez and Heather Benavidez, and Minor Plaintiffs J.C.B. and A.J.B. respectfully submit the following memorandum of points and authorities in opposition to Defendants' Motion to Dismiss Second Amended Complaint:

## I.  INTRODUCTION

Following this Court's October 12, 2018 Order on Motion to Dismiss with leave to amend (ECF 17), Plaintiffs filed their Second Amended Complaint, including allegations to address all deficiencies identified by this Court.

Despite these revisions, Defendants continue to argue they cannot be held liable on any of Plaintiffs' claims. However, the allegations now pled are sufficient to establish claims against both the individual social worker defendants and the County of San Diego.

Plaintiffs allege that Defendants Jennifer Lisk and Benita Jemison made misrepresentations and omissions of material fact to the Juvenile Court when seeking a court order for medical procedures, including examinations of the Plaintiff Minors at the County's Polinsky Children's Center ("Polinsky"). Plaintiffs allege that these misrepresentations and omissions of fact were material to the Juvenile Court's decision to issue the order, and that the order would not have been issued without such misrepresentations and omissions. Last, Plaintiffs allege that due to the fraudulently-obtained Juvenile Court order, the social worker defendants circumvented the constitutional requirements that the parents must consent to and be given an opportunity to be present at the examinations of their children. Because Plaintiffs' Fourteenth Amendment judicial deception claim against the social worker defendants has been well recognized in the Ninth Circuit since at least 2009, they are not protected by qualified immunity. Further, since Plaintiffs are not challenging the order itself (only the fraud on the Juvenile Court that led to the order), and could not have challenged the order in the Juvenile Court dependency proceedings, their claims against the Defendant social workers are not barred by the *Rooker-Feldman* doctrine.

Plaintiffs also sufficiently allege the County's deliberate indifference in adopting and implementing policies, procedures, customs, practices and training to ensure that the constitutional rights of parents and their children are protected during the County's "required" Polinsky examinations. To this day, the County continues to maintain these examinations are constitutional in the absence of exigency, court order, or parental consent and presence. *See, e.g., Mann v. County of San Diego*, 907 F.3d 1154, 1159 fn. 6 (9th Cir. 2018). This culture pervades the County's policies, practices and training, and ensures that constitutional rights, such as those of Plaintiffs in this case, continue to be violated by County agents and employees.

Plaintiffs have alleged sufficient facts to support their claims in the Second Amended Complaint. However, in the event this Court believes the allegations continue to be deficient in any particular regard, Plaintiffs should be allowed leave to amend their complaint.

## II. PROCEDURAL HISTORY

Plaintiffs' original complaint was filed on March 16, 2018 (ECF 1). In response to a motion to dismiss (ECF 11), Plaintiffs filed their First Amended Complaint on July 5, 2018 (ECF 12). Defendants filed their Motion to Dismiss the First Amended Complaint on July 19, 2018 (ECF 14). On October 12, 2018, this Court granted Defendants' Motion to Dismiss with leave to amend (ECF 17).

In its Order, the Court first addressed Defendants' claim that the *Rooker-Feldman* doctrine barred Plaintiffs' Fourteenth Amendment claim regarding the physical examination of J.C.B. and A.J.B. absent their parents' consent and/or valid court order. This Court held that to the extent Plaintiffs were challenging the Juvenile Court Order itself, *Rooker-Feldman* would apply. This Court gave Plaintiffs leave to amend the Complaint to assert allegations that the extrinsic fraud exception to the *Rooker-Feldman* doctrine applied. This Court indicated that sufficient facts to establish such extrinsic fraud would include: 1) specifying the exculpatory facts that were not disclosed

to the Juvenile Court by Defendants Lisk and Jemison, 2) clarifying whether there were Juvenile Court hearings other than the March 21, 2016 Detention Hearing at which Plaintiffs might have been told about the examinations and given an opportunity to object; 3) clarifying when Plaintiffs became aware of the Juvenile Court's order authorizing the examinations; and 4) clarifying whether Plaintiffs had an opportunity in Juvenile Court to "voice their concerns regarding the alleged misrepresentations and concealments of Defendants Lisk or Jemison." (ECF 17, pg. 10) This Court stated "Plaintiffs have failed to allege 'that Defendants committed any fraud that they were prevented from challenging in the [state court] proceedings.'" (ECF 17, pg. 10)

As to Plaintiffs' Fourteenth Amendment claim that the children's medical examinations were conducted outside of their parents' presence, this Court stated that Plaintiffs' "allegations are unclear as to whether this right was violated," because the FAC failed to identify the government official/s who excluded the parents from the examinations, the FAC "only vaguely alleges that Parents were never told" about the examinations, and that there were no allegations that Defendants Jemison and Lisk were responsible for providing the parents with notice. (ECF 17, pg. 13-14)

As to the Fourth Amendment claims by the Plaintiff minors against Defendants Lisk and Jemison, this Court held that Plaintiffs must plead facts to support that Defendants Lisk and Jemison were "integral participants" in the unconstitutional searches of the Plaintiff Minors.

As to Plaintiffs' *Monell* claim regarding the policies, procedures, practices and customs of the County of San Diego regarding medical examinations, this Court held that Plaintiffs did not allege facts to suggest that the County implemented or promulgated any municipal custom, policy, or practice with deliberate indifference to constitutional rights, or that such policy was the "moving force" of their injury. (ECF 17, pg. 18) This Court stated that Plaintiffs' "vague allegations" regarding the Detention Report Form and Protective Custody Warrant policies "do not give rise to the plausible inference" there

was "a municipal policy or custom in place or that any County employee with the requisite authority acted with deliberate indifference." (ECF 17, pg. 18)

Last, as to Plaintiffs' *Monell* failure to train cause of action, this Court stated that Plaintiffs did not sufficiently identify the challenged policy/custom, explain how the policy/custom was deficient, explain how the policy/custom caused them harm, and explain how the deficiency was obvious and the constitutional injury was likely to occur. (ECF 17, pg. 19-20)

On November 9, 2018, Plaintiffs filed their Second Amended Complaint (ECF 18). As discussed further below, this Complaint included allegations to address all deficiencies identified by the Court in its October 12, 2018 Order.

### III. SUMMARY OF ALLEGATIONS

On or about March 18, 2016, Defendants Lisk and Jemison sought and obtained a protective custody warrant to temporarily remove Minor Plaintiffs J.C.B. and A.J.B. from their parents. *Nothing in the March 18, 2016 protective custody warrant or minute order addressed medical, physical, or any other type of examination of the Minor Plaintiffs.* (Second Amended Complaint ("SAC"), ¶25) After obtaining the warrant, Lisk arrived at Plaintiffs' home with another social worker and four police officers to remove the children. (SAC ¶26) Lisk spent a great deal of time with Plaintiffs discussing the terms of the removal and arrangements for Plaintiffs' older son. (SAC, ¶26) Lisk consulted with Jemison on multiple occasions during this encounter. (SAC, ¶26) *At no time during this very lengthy encounter did Lisk or Jemison request Heather or John Benavidez sign a Consent for Examination Form, inform them that their children would be examined when they got to Polinsky, or inform them that they had the right to be present for such examinations, even though they had plenty of opportunity to do so.* (SAC ¶26). Under the County's written policy, both Lisk and Jemison, Lisk's supervisor, were required to attempt to obtain such consent, and provide such notification and opportunity to the parents. (SAC, ¶17, 20-22)

4

Following this meeting, Lisk transported the Minor Plaintiffs to Polinsky, where they were admitted to the facility. (SAC, ¶28) The Minor Plaintiffs were healthy, exhibited no signs of abuse, exhibited no signs of any type of injury, and neither Lisk nor Jemison believed the children were in need of urgent medical attention. (SAC, ¶27) There were no allegations that the Minor Plaintiffs had ever been physically or sexually abused. (SAC, ¶27) Thus, there were no exigent circumstances for the Minor Plaintiffs to be examined by a health care professional when they were removed. (SAC, ¶40) Nevertheless, Defendants Lisk and Jemison were well aware when they brought the children to Polinsky that the children would be subjected to medical procedures, including examinations, while at Polinsky, and that their parents had a constitutional right to be provided with the opportunity to consent to and be present at the examinations. (SAC, ¶17, 44)

Three days after the children's removal, on March 21, 2016, a Detention Hearing was held in Juvenile Court. (SAC, ¶29) *Other than this hearing (and the hearing, if any, required to obtain the Protective Order), no other court hearing occurred prior to the children being examined.* (SAC, ¶29) Defendants Lisk and Jemison submitted a Detention Report to the Juvenile Court in advance of the hearing. (SAC, ¶30) Although they were required by the County's written policy to address in the Detention Report whether the parents had signed the Consent to Treat Form, and the efforts to obtain that consent, Lisk and Jemison omitted from the Detention Report, and any other documents they provided to the Juvenile Court, *that they <u>did not</u> attempt to contact the parents about the medical procedures, including examinations, of their children, that they <u>did not</u> request the parents' consent, and that they <u>did not</u> tell the parents they could be present.* (SAC, ¶30)

Instead, Defendants Lisk and Jemison submitted a request that the Juvenile Court sign an "Order Authorizing Medical Examination and Treatment" of the Minor Plaintiffs. (SAC, ¶35) This request was made without notice to the Plaintiffs or an opportunity to be

heard on the issue. Defendants' request misrepresented to the Juvenile Court that they had "made reasonable efforts to locate or contact" the children's parents to notify them of the request for medical examination, that the parents had objected, or that they had made reasonable efforts to schedule the examination for a time when the parents were available, but that such efforts were unsuccessful. (SAC ¶35-37) These statements were false. Moreover, Lisk and Jemison ***did not*** tell the Juvenile Court that the parents were available at all times to sign the consent forms (including on the date the protective custody warrant was served), that they had never notified the parents that their children would be examined (or when that examination would take place), and that they never provided the parents with any opportunity whatsoever to consent or object to the examinations. (SAC, ¶37-38)

Heather and John Benavidez attended the Detention Hearing. (SAC, ¶32) Heather and John Benavidez were available before, during, and after that hearing for Lisk and Jemison to speak with regarding their consent to the physical examinations of their children. (SAC, ¶32) At no time, however, did Lisk or Jemison speak with or notify Heather and John about the physical examinations that would occur at Polinsky or attempt to gain their consent for the examinations. (SAC, ¶32) Additionally, the subject of physical examinations at Polinsky, whether with consent or via court order, was not addressed on the record at the Detention Hearing – *the only Juvenile Court hearing held before the examinations were conducted.* (SAC, ¶34) Heather and John Benavidez were therefore completely unaware that physical examinations of their children would be occurring at Polinsky, and were not given the opportunity to attend such examinations. (SAC, ¶39-43) They did not learn about these examinations until after they occurred, and did not learn of the existence of the fraudulently obtained "order" authorizing the examinations until long after the children were released and the dependency proceedings were terminated. (SAC, ¶33, 43)

Based upon the false representations by Defendants Lisk and Jemison, the Juvenile Court signed an order allowing an examination of the Minor Plaintiffs. (SAC, ¶36) This order did not bar the presence of the parents from the examination, or otherwise relieve Lisk and Jemison of their obligation to notify John and Heather about the examinations and provide them with an opportunity to be present. (SAC, ¶36)

On the day after the Detention Hearing, March 22, 2016, with no consent from the parents or **valid** Court Order, medical procedures, including examinations, were conducted on J.C.B. and A.J.B. (SAC, ¶39) Plaintiffs are informed and believe that these examinations included, but may not be limited to, a full body inspection including the children's genital and/or anal areas, obtaining urine to test, and drawing blood and/or vaccinations. (SAC, ¶39) John and Heather had no idea these examinations were going to occur and were not given any opportunity to be present at the examinations to comfort their children. (SAC, ¶41-43) Plaintiffs are informed that the medical procedures, including examinations, of Minor Plaintiffs found no evidence of abuse of any kind and concluded that they appeared healthy and well. (SAC, ¶46)

The medical procedures, including examinations, of the Minor Plaintiffs were performed pursuant to the County's policies, procedures, customs and/or practices. (SAC, ¶45) The County performs medical procedures, including examinations, on every child that is admitted to Polinsky. (SAC, ¶17) For many years (since the 2000 decision in *Wallis v. Spencer*, 202 F.3d 1126 (2000)), the County has disregarded the constitutional rights of children and their parents in conducting medical procedures, including examinations, at Polinsky. (SAC, ¶17-18) After multiple decisions challenging its practices, and in direct response to the District Court's ruling in *Swartwood* v *County of San Diego,* 84 F.Supp.3d 1093 (S.D. Cal. 2014), and the subsequent stipulated judgment between the parties as a result of decision (a copy of which was attached as Exhibit 1 to the SAC), the County purportedly made changes to its written policies. (SAC, ¶17-18)

Case No. 18-cv-0558-CAB-AGS

Notice of the purported written policy changes was issued on February 9, 2015. (SAC, ¶17) In a Special Notice, the County provided its staff with "new and updated information" regarding consent for medical treatment for children in CWS custody, including intake medical examinations at PCC, the rights of parents to be present at the intake medical examinations, and the new consent forms that should be used. (SAC, ¶17) According to the Special Notice, for children removed from their parents on or after 2/10/15, no medical examination may occur at Polinsky unless or until there is a signed consent for that examination or a court order. (SAC, ¶17) Additionally, the new written policies were to specify that prior to seeking a court order for a medical examination, the social worker must take reasonable steps to locate the parent and obtain consent. (SAC, ¶17) The notice specified that if the child is removed on or after 2/10/15 and a parent is available to sign the consent form, the social worker must ask one parent to sign the Consent for Examination form, indicating whether he or she wants to be present at the intake examination. (SAC, ¶17) The notice also specified that the social worker is required to make every attempt to have a parent sign a consent form for a child entering protective custody, and that social workers must address whether the parent signed or did not sign the Consent form in the Detention Report. (SAC, ¶17)

Despite a statement in the Special Notice that all County social workers were to receive and be trained on this Special Notice and its requirements, it was clear that the training, and the practices that resulted, continued to be deliberately indifferent to the rights of children and their parents. (SAC, ¶17-18, 45, 47, 58-61) The County's practices continued to permit or allow the medical procedures, including examinations, to be conducted without parental notice or consent and without an urgent medical need or to preserve evidence; and without informing parents of the medical procedure, including examinations; and excluding parents from attending such medical procedure, including examinations, when they occur. (SAC, ¶45, 58-61) *See, e.g., Mann v. County of San Diego*, *supra*, 907 F.3d at 1159 fn. 6.

Proof of the County's continued deliberate indifference to the constitutional rights of parents and their children is evident through the County's customs and practices. The County continues to argue that the pre-*Swartwood* medical procedures, including examinations, conducted at Polinsky in the absence of exigency, consent, or court order are constitutional. (SAC, ¶18, 24)[1] The County's policies, procedures, practices, customs, and training provide no guidance for a social worker obtaining and executing a Protective Custody Warrant to ensure that the constitutional rights of the children and their parents are protected, and do not require as part of the warrant process that the social workers obtain parental consent to medical examinations which the social workers know will follow the warranted removal of the children. (SAC, ¶25-26) In the absence of policies and procedures, and due to the culture (practice and custom) within the County's child protective services that the constitutional rights of parents and children be ignored in any situation in which that entity is claiming to act to "protect" children, the County's policies and practices (or lack thereof) ensured that social workers removing children with a protective custody warrant would not obtain consent from or notify parents of the medical procedures, including examinations, that will occur at Polinsky. (SAC, ¶24)

Additional evidence of the County's deliberate indifference is seen in the Detention Report form template used by all social workers, and designed to ensure they provide all of the information necessary to ensure due process and other substantive constitutional rights for children and their parents, which either does not prompt social workers to provide details concerning parental consent for the medical procedures, including examinations, or allows social workers to override and delete that section of the

---

[1] *See, e.g., Mann v. County of San Diego, supra*, 907 F.3d at 1159, fn. 6. Additionally, the County recently filed a Petition for Rehearing En Banc in the Ninth Circuit Court of Appeals in which it argues that it is constitutional to conduct medical procedures, including examinations, of children at its Polinsky facility in the absence of exigency, court order, parental consent, or parental presence. (Declaration of Donnie R. Cox)

form. (SAC, ¶61) This allows social workers who wished to circumvent the constitutional requirements, like Defendants Lisk and Jemison, to do so. (SAC, ¶61)

## IV. MOTION TO DISMISS DECIDED ON PLEADINGS

On a motion to dismiss, all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *D. K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F.Supp.2d 1184, 1189 (ED Cal.2009). In addition, all reasonable inferences must be in favor of the nonmoving party. *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir.2000). This rule of liberal construction "is particularly important in civil rights cases." *Id*. "A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir.1996).

The Court may not consider material outside the pleadings on a Rule 12(b)(6) motion to dismiss, unless such evidence is the proper subject of judicial notice. *See, e.g., Arpin v. Santa Clara Valley Tranp. Agency*, 261 F.3d 912, 925 (9th Cir.2001). As discussed in the concurrently-filed Objections to Request for Judicial Notice, Defendants have improperly requested this Court take judicial notice of an indecipherable document that has no foundation whatsoever. Additionally, while Defendants have requested this Court take judicial notice of a number of juvenile court orders, it is notable that Defendants do not include the Minute Order for the Detention Hearing (which, as alleged by Plaintiffs in their Second Amended Complaint, does not reference any examination order). Nor did Defendants include minute orders for the Protective Custody Warrant or Order for Examination since neither involved a hearing at which Plaintiffs were allowed to be present.

The court should "freely give" leave to amend. *D.K., supra*, 667 F.Supp.2d at 1189. Leave to amend is only denied when it is clear the deficiencies cannot be cured by amendment. *Ibid*.

## V. PLAINTIFFS HAVE STATED A CLAIM AGAINST DEFENDANTS LISK

Case No. 18-cv-0558-CAB-AGS

## A.    Plaintiffs Have Sufficiently Alleged the Elements of Their Claim

To allege a claim under 42 U.S.C. §1983, Plaintiffs must plead (1) the defendants acting under color of state law (2) deprived Plaintiffs of rights secured by the Constitution or federal statutes. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986). It is undisputed here that Plaintiffs have alleged Defendants Lisk and Jemison were acting under color of state law. Thus, the question is whether Plaintiffs have sufficiently alleged that Defendants Lisk and Jemison deprived Plaintiffs of their constitutional rights.

Plaintiffs alleged two factual bases for their Fourth and Fourteenth Amendment Claims against Defendants Lisk and Jemison. The first is that Defendants Lisk and Jemison provided false information to, and omitted material facts from, the Juvenile Court to obtain a fraudulent order to conduct medical examinations on the Plaintiff Minors, in violation of all Plaintiffs' Fourteenth Amendment rights. The second is that Defendants Lisk and Jemison were integral participants in the unconstitutional examinations of the Plaintiff Minors by knowingly providing Polinsky with the fraudulently obtained order.

Plaintiffs further allege that Defendants Lisk and Jeminson provided the order they knew to be fraudulently obtained to Polinsky Children's Center to "authorize" that facility to conduct medical procedures, including examinations, on the Minor Plaintiffs. Defendants Lisk and Jemison knew the medical procedures, including examinations would take place as a result of their fraudulent conduct, and that they were being conducted without parental consent, valid court order, or other circumstances authorizing the medical procedures. Accordingly, Defendants Lisk and Jemison violated the Fourth Amendment rights of the Minor Plaintiffs and Fourteenth Amendment rights of all of the Plaintiffs. Additionally, Defendants Lisk and Jemison did not notify Plaintiffs of the medical procedures, including examinations, or allow

Heather or John Benavidez to be present, thereby violating the Fourteenth Amendment rights of all Plaintiffs.

All of these claims are supported by the factual allegations in the complaint, and by case law.

1.    Plaintiffs Have Alleged that Lisk and Jemison Procured the Order Through Fraud

Plaintiffs allege that Defendants Lisk and Jemison submitted false information to the Juvenile Court to obtain an order to examine the Minor Plaintiffs.  Because of the Order issued by the Juvenile Court, and because discovery has not yet commenced, and all documents relevant to this claim are within the exclusive possession, custody and control of the County, Plaintiffs have posited several alternative representations, one of which must have been made to the Juvenile Court by Defendants Lisk and Jemison, in order for the Court to find that a physical examination of the minor children could commence without the consent or presence of the their parents.[2]  **All of these representations are false.**  Specifically, Plaintiffs allege:

1) Defendants Lisk and Jemison informed the Juvenile Court that the County had "made reasonable efforts" to contact Plaintiff Parents to notify them of the Agency's request for medical examinations of the children, but such efforts were unsuccessful – a representation that is false given the multiple contacts between Defendants Lisk and Jemison and Plaintiff Parents prior to the time Defendants Lisk and Jemison misrepresented such facts to the Juvenile Court. (SAC, ¶36)

2)    Defendants Lisk and Jemison informed the Juvenile Court that Plaintiff Parents objected to the medical examination and treatment of their children – a representation that is false because Defendants Lisk and Jemison never informed Plaintiff Parents that the examinations were going to take place. (SAC, ¶36)

---

[2] The court found that each of these misrepresentations, in the alternative, were "true."

3) Defendants Lisk and Jemison informed the Juvenile Court that they made reasonable efforts to schedule the examination of the children for a time when the Plaintiff Parents were available to attend, but such efforts were unsuccessful – a representation which is false because Defendants Lisk and Jemison never made any efforts to notify Plaintiff Parents that the examinations were to take place or to schedule them at a time when the Plaintiff Parents were available to attend. (SAC, ¶36)

Contrary to Defendants' assertions, Plaintiffs do not allege, and the Orders lodged by Defendants as Exhibits I and J do not evidence, that Plaintiffs had notice that the medical examinations would occur. In fact, the first of the three alternative "findings" listed on the Orders explicitly recognizes that the parents were not provided with notice of the examinations. Defendants also contend that Plaintiffs had "notice" of the medical examinations because the clerk of the juvenile court is required to serve orders of the court on parents (or counsel) within three judicial days of their issuance – or, in this case, two days after the examinations had already taken place. Even if these particular orders were served, for which there is no evidence, there can be no dispute that they would have been received ***after*** the examinations had taken place, and therefore did not afford Plaintiffs with notice and opportunity to be present at the examinations or to be heard as to *whether the examinations should take place at all*. That notice and opportunity was required to be provided by Defendants Lisk and Jemison, particularly since they were the ones that obtained the fraudulent Order.

It is undeniable that Plaintiffs have a right to be free from deception in the presentation of evidence during juvenile dependency proceedings. *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir.2009). "The constitutional right to be free from the knowing presentation of false or perjured evidence" is clearly established. *Devereaux v. Perez*, 218 F.3d 1045, 1055-56 (9th Cir.2000). "Government perjury and the knowing use of false evidence are absolutely and obviously irreconcilable with the Fourteenth

Amendment's guarantee of Due Process in our courts." *Hardwick v. County of Orange*, 844 F.3d 1112, 1119 (9th Cir.2017). "There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." *Id*.

To support a cognizable claim for violation of constitutional rights due to the judicial deception of a social worker, Plaintiffs must allege the defendants deliberately *or recklessly* made false statements or omissions that were material to the decisions made by the juvenile court. *Greene*, *supra*, at 1035. "Whether a false statement was 'material' to the finding of probable cause is a question of law for the reviewing court." *Id*. Alleged misrepresentations or omissions are "material" if the "Juvenile Court would have declined to issue the order" had the social worker been truthful. *Id*.

Plaintiffs have alleged all of these elements, and have included the additional facts required by this Court specifying the exculpatory facts that were not disclosed to the Juvenile Court by Defendants Lisk and Jemison (SAC, ¶30), clarifying that there were no Juvenile Court hearings other than the March 21, 2016 Detention Hearing at which Plaintiffs might have been told about the examinations and given an opportunity to object (SAC, ¶32), and clarifying that Plaintiffs did not become aware of the Juvenile Court's order authorizing the examinations until long after the examinations were conducted and the juvenile dependency proceedings were terminated. (SAC, ¶33).

As discussed further below, even if they knew about the fraudulently obtained orders during the dependency proceedings (which they did not), Plaintiffs did not have an opportunity, in Juvenile Court, to challenge them, because the ***examinations had already taken place***. Although Defendants point to several hearings that took place after the March 21, 2016 Detention Hearing, all of these hearings occurred *after the March 22, 2016 examinations*. This is not a situation, like *Ansley v. Superior Court*, 185 Cal.App.3d 477 (1986), where a parent challenged the court's personal jurisdiction over him due to a lack of due process. In this case, Plaintiffs allege that Defendants Lisk and Jemison

violated their Fourteenth Amendment rights by misrepresenting facts to and omitting facts from the Juvenile Court, which misrepresentations and omissions were material to the issued order. Defendants have not cited, nor can they cite, any case that states that Plaintiffs could have challenged this unconstitutional conduct during the juvenile dependency proceedings.

Plaintiffs have sufficiently alleged facts to support their Fourteenth Amendment judicial deception claim against Defendants Lisk and Jemison.

　　　2.　　Plaintiffs Have Alleged a Fourth Amendment Claim by the Minors

It has been well-settled for many years that the medical procedures, including physical examinations, conducted on children at Polinsky violate the Fourth Amendment rights of the children when they are performed without exigency, parental consent, or valid court order. *See, e.g., Wallis v. Spencer*, *supra*, *Parkes v. County of San Diego*, 345 F.Supp.2d 1071 (S.D.Cal.2004), *Swartwood v. County of San Diego*, *supra*, *Reynolds v. County of San Diego*, 224 F.Supp.3d 1034 (S.D.Cal.2016). Most recently, the Ninth Circuit, addressing the very same Polinsky examinations as conducted here, stated, "The County's continued failure to provide parental notice and obtain consent for the Polinsky medical examinations has harmed families in Southern California for too long." *Mann v. County of San Diego*, *supra*, 907 F.3d at1167. The *Mann* court held that the Polinsky examinations are "well within the ambit of the Fourth Amendment," and that children "removed from their parents' custody have a legitimate expectation of privacy in not being subjected to medical examinations without their parents' notice and consent." *Id*. at 1164-65. The court concluded that the County violated the children's Fourth Amendment rights "by failing to obtain a warrant or to provide these constitutional safeguards before subjecting the children" to the Polinsky examinations. *Id*. at 1167.

As discussed above, Plaintiffs have adequately alleged that the medical procedures, including examinations, were performed without exigency, parental consent, or *valid* court order.

Additionally, Plaintiffs have alleged that Defendants Lisk and Jemison were "integral participants" in the Fourth Amendment violation. Plaintiffs alleged that were it not for Defendant Lisk and Jemison's fraud on the court, and their provision of the fraudulently-obtained order to Polinsky, the constitutionally-violative medical procedures, including examinations, would not have taken place. Without the fraudulent actions of Defendants Lisk and Jemison, Polinsky and its contracted medical providers would not have had the perceived authority to proceed with the examinations. *See, e.g., Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir.2004) [police officers who were aware of a decision to use a flash-bang device to gain entry to a dwelling, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed" may be held liable for the Fourth Amendment violation alleged.]

3. <u>Plaintiffs Have Alleged Fourteenth Amendment Violations</u>

The right to conceive and raise one's children has been deemed "essential" (*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)), one of the most "basic civil rights of man" (*Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)), and a right "far more precious . . . than property rights." (*May v. Anderson*, 345 U.S. 528, 533 (1953)). "The interest of parents in the care, custody and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this court." *Troxel v. Granville*, 530 U.S. 57 (2000). "The right to refuse a medical exam and the parent's right to control the upbringing, including the medical care, of a child – fall within this sphere of protected liberty." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir.2003). As stated in *Wallis*, *supra*, this constitutional liberty interest "includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." 202 F.3d at 1141.

"[T]he County violates parents' Fourteenth Amendment substantive due process rights when it performs the Polinsky medical examinations without notifying the parents about the examinations and without obtaining either the parents' consent or judicial

authorization." *Mann, supra*, 907 F.3d 1161; *see, also, Wallis v. Spencer*, *supra, Parkes v. County of San Diego*, *supra, Swartwood v. County of San Diego*, *supra, Reynolds v. County of San Diego*, *supra*.

As discussed above, Plaintiffs have alleged facts demonstrating that Defendants Lisk and Jemison knowingly procured the medical procedures, including examinations, with a fraudulent order. Defendants had no parental consent, exigency, or valid court order to conduct the examinations. Moreover, Plaintiffs have alleged facts that Defendants Lisk and Jemison provided no notice to Plaintiffs that the medical procedures, including examinations, would be performed at Polinsky, and thereby deprived Plaintiffs of their constitutional right to be together during the medical procedures, including examinations. Accordingly, Plaintiffs have alleged sufficient facts to support a claim that their 14th Amendment rights were violated.

Plaintiffs have also alleged sufficient facts to support a claim that the individual defendants' actions conduct "shocked the conscience," as required in 14th Amendment due process claims. In *Gantt v. City of Los Angeles*, 717 F.3d 702 (9th Cir.2013), the Ninth Circuit held where there is time for deliberation, conduct that is deliberately indifferent or in reckless disregard of a person's rights is "consistent with the standard imposed in the substantive due process context, in which government action may violate due process if it 'shocks the conscience.'" *Id*. at 707-708. Here, Plaintiffs allege that the individual Defendants procured a Juvenile Court order by *fraud,* and then presented the knowingly invalid order to Polinsky to "authorize" the medical procedures, including examinations, and did not discuss any aspect of the medical procedures, including examinations, with John and Heather Benavidez at any time, despite several opportunities to do so.

Plaintiffs are not, as Defendants claim, alleging simply that Defendants Lisk and Jemison failed to follow County policy. Plaintiffs have alleged that Defendants Lisk and

Case No. 18-cv-0558-CAB-AGS

Jemison committed a fraud on the court that resulted in multiple violations of Plaintiffs' well-settled constitutional rights.

## B. This Action is Not Preempted by the *Rooker-Feldman* Doctrine

Plaintiffs' claims against the individual Defendants are not pre-empted by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine stands for the proposition that a "federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir.2003). The scope of the *Rooker-Feldman* doctrine is exceedingly narrow, and applies only where a federal plaintiff seeks relief from a state court judgment based on an allegedly erroneous decision. *Id*. at 1164. The *Rooker-Feldman* doctrine does not bar jurisdiction where, as here, a "federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party." *Ibid.* (*See, e.g., Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir.2005) [MHC's complaint to the district court not a "forbidden appeal under *Rooker-Feldman*" where MHC's complaint did not challenge a state court's factual or legal conclusion.] "The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction." *Noel*, at 1165.

The *Rooker-Feldman* doctrine does not apply in the instant case for two reasons: 1) Plaintiffs are not seeking an order from this court reversing the Juvenile Court Order authorizing the examinations; and 2) the Order authorizing the examinations does not constitute a "final judgment of a state court."

Plaintiffs' suit is not a "forbidden de facto appeal" of the Juvenile Court order. This suit does not assert as a "legal wrong an allegedly erroneous decision by the state court in the earlier state court litigation nor [seek] relief from the state court" decision.

*Noel*, at 1166. Plaintiffs do not, as Defendants contend, allege that the "state court was wrong." Instead, Plaintiffs seek damages for the knowingly false misrepresentations and omissions to the Juvenile Court made by Defendants Lisk and Jemison that were material to that court's issuance of the order, and that without such misrepresentations and omissions, the juvenile court would not have issued the order. Plaintiffs' complaint is not a forbidden appeal under *Rooker-Feldman*.

Moreover, the Order does not constitute a "final judgment" of a state court as required by *Rooker-Feldman*. "The dispositional order is the adjudication of dependency and is the first appealable order in the dependency process." *In re Sheila B.,* 19 Cal. App 4th 187, 196 (1993).

Defendants acknowledge that where a plaintiff alleges wrongful acts by the adverse party (vs. legal error by the state court), that plaintiff has alleged extrinsic fraud, removing the claim from rubric of the *Rooker-Feldman* doctrine (ECF 26-1, pg. 12, ll. 35). Plaintiffs do allege such wrongful acts by the Defendant social workers. However, Defendants still claim Plaintiffs cannot take advantage of the extrinsic fraud exception because Plaintiffs had "ample opportunity to raise their current claims regarding the medical examinations in the juvenile proceeding." (ECF 26-1, pg. 19) Defendants cite no authority for this assertion. In fact, Plaintiffs had no opportunity in the juvenile dependency proceedings to raise their claims <u>for damages</u> for the constitutional violations committed by the social worker defendants. These are civil rights damages claims that are not addressed or raised in juvenile dependency proceedings determining the dependency jurisdiction over a child. *See, e.g., Milligan v. City of Chandler*, 135 Fed.Appx. 7, 8 (9th Cir.2005) [*Rooker-Feldman* doctrine did not bar the plaintiff's constitutional claims because Milligan alleged the defendants misrepresented facts so an injunction would be issued against him]; *Olga C. v. County of Santa Clara*, 701 Fed.Appx. 551, 553 (9th Cir.2017) [*Rooker-Feldman* doctrine did not bar the plaintiff's federal claims based on

defendants' alleged extrinsic fraud on the Santa Clara County Juvenile Court in connection with dependency proceedings].

Plaintiffs' §1983 claims are not pre-empted by the *Rooker-Feldman* doctrine.

**C.    Defendants Lisk and Jemison Are Not Protected By Qualified Immunity**

Since 2009, the Ninth Circuit has made it clear that parents and children have a right to be free from deception in the presentation of evidence during a juvenile dependency proceedings. *Greene v. Camreta, supra*, 588 F.3d at 1035. In *Greene*, the Ninth Circuit held there is a "basic constitutional right to be free from the knowing presentation of false or perjured evidence." *Id*. As stated by the Ninth Circuit in *Hardwick v. County of Orange, supra*, "No official with an IQ greater than room temperature in Alaska could claim that he or she did not know that the conduct at the center of this case violated both state and federal law." *Id*. at 1118.

Here, Plaintiffs allege that Defendants Lisk and Jemison made intentionally false representations to the Juvenile Court in order to procure an order to conduct medical procedures, including examinations, on the Minor Plaintiffs. Plaintiffs allege that Defendants Lisk and Jemison thereafter utilized this fraudulently-obtained order to "authorize" the medical procedures, including examinations, of the children. Defendants Lisk and Jemison cannot claim they did not have "fair warning" of the unconstitutionality of their conduct. As in *Hardwick*, their conduct is "so clearly and obviously wrong that the conduct itself unmistakably 'should have provided [defendants] with some notice' that their alleged conduct violated their targets' constitutional rights." *Hardwick*, at 1120.

Additionally, there is ample precedent to provide "fair warning" to the social workers that procuring medical procedures, including examinations, of the Minor Plaintiffs in this case without a valid court order, parental consent, exigency, and without providing the parents with notice of the examinations and the opportunity to be present, violated the constitutional rights of all of the Plaintiffs. As discussed above, since the 2000 *Wallis* decision, the Ninth Circuit and this District have held on multiple occasions

that medical procedures, including examinations, such as those conducted at Polinsky, violate constitutional rights of parents and their children. In 2014, the County actually stipulated to the entry of judgment against it on a claim based upon the constitutionally-violative examinations, and agreed to change its policies and procedures. Defendants Lisk and Jemison cannot reasonably claim their role in fraudulently procuring the constitutionally-violative examinations in this case should be protected by qualified immunity. The "contours" of Plaintiffs' rights in this case "were sufficiently definite that any reasonable official in [their] shoes would have understood that [she] was violating it." *Hardwick, supra*, 844 F.3d at 1117.

**D.     Plaintiffs Have Adequately Alleged Punitive Damages**

Plaintiffs' claim for punitive damages against Defendants Lisk and Jemison is sufficient if they allege that those Defendants' conduct was in reckless disregard of Plaintiffs' rights – i.e., it reflects complete indifference to Plaintiffs' rights. (Ninth Circuit Model Jury Instruction 5.5; *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir.1993).)

Here, as stated above, Plaintiffs have alleged that Defendants Lisk and Jemison knew that they needed parental consent or a court order for the children to undergo medical procedures, including examinations, at Polinsky and had ample opportunity (4 days) to obtain consent from Heather and John Benavidez. Despite this knowledge and opportunity, Plaintiffs allege that Defendants Lisk and Jemison completely disregarded Plaintiffs' well-settled constitutional rights and obtained a court order (and thus, the medical procedures, including examinations) through intentionally misrepresenting facts to the Juvenile Court. These facts are certainly adequate to state a claim for punitive damages against the individual defendants.

**VI. PLAINTIFFS HAVE STATED A CLAIM AGAINST THE COUNTY**

In *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court held that local governing bodies can be sued directly under

Case No. 18-cv-0558-CAB-AGS

§1983 where a local policy, custom or practice was the "moving force of the constitutional violation."

The County has had a longstanding policy and/or practice of physically examining and testing children at PCC without the knowledge, consent or presence of parents. *See, e.g., Mann v. County of San Diego, supra; Parkes v. County of San Diego, supra; Swartwood v. County of San Diego, supra* (where the County stipulated to a Judgment that its PCC examinations violated the constitutional rights of children and their parents); *Reynolds v. County of San Diego, supra.* As recognized by the Ninth Circuit in *Mann,* the County continued with its policy of conducting investigatory examinations of children at Polinsky without actual parental consent, particularized court order, exigency, or special need despite multiple court rulings holding that by doing so, it was violating the constitutional rights of children and their parents.

Plaintiffs allege that the County's policies, procedures, practices and customs are the moving force behind continued constitutionally violative medical procedures, including examination, including those conducted on the Plaintiff minors in this case, despite purported changes to those policies, procedures, practices and customs.

Plaintiffs allege that the culture of the County is to ignore the constitutional rights of parents and their children when it comes to the Polinsky medical procedures, including examinations. Plaintiffs allege specific instances of this deliberately indifferent culture, including a protective custody warrant policy and procedure which does not require the social workers to obtain parental consent, and a Detention Report form template that allows social workers to override or delete important information regarding their efforts (or lack of efforts) to protect the constitutional rights of their clients. Plaintiffs further allege that the County's policies, procedures, practices and customs, including the specific examples alleged, were a moving force behind the Fourth and Fourteenth Amendment violations in this case due to its practice of allowing medical procedures,

including examinations, to occur without having a valid court order, without giving parents notice, and without obtaining consent from a parent.

Plaintiffs also adequately allege their *Monell* claims based on training and lack of supervision or discipline. A claim for "inadequate training" can be the basis for §1983 liability. *Board of the County Commissioners v. Brown*, 520 U.S. 397, 407 (1997). Existence of a "program" makes proof of fault and causation at least possible in an inadequate training or supervision case. *Id*. "If a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." *Id*. at 407.

Here, Plaintiffs allege that the County has a longstanding policy and practice of ignoring the constitutional rights of parents and their children in connection with the Polinsky medical procedures, including examinations. The County ***to this day*** maintains that the exams conducted at Polinsky are constitutional even in the absence of consent, court order, or exigent circumstances. Plaintiffs have alleged that as a result of the County's longstanding and pervasive deliberate indifference to the constitutional rights of parents and their children, its training, supervision, and discipline (or lack of discipline) is inadequate to prevent further constitutional violations.

Plaintiffs have stated sufficient facts to support their claims against the County.

///

///

///

///

///

## VII. CONCLUSION

On the basis of the foregoing argument, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

In the alternative, Plaintiffs respectfully request that this Court allow Plaintiffs the opportunity to amend their Complaint to address any deficiencies in pleading.

DATED: January 7, 2019          LAW OFFICE OF DONNIE R. COX


*/s/ Donnie R. Cox*_____
DONNIE R. COX, Attorney for Plaintiffs