UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BENAVIDEZ, HEATHER BENAVIDEZ, J.C.B. a minor, and A.J.B. a minor,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY, POLINSKY CHILDREN'S CENTER, JENNIFER LISK, BENITA JEMISON, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-0558-CAB-(AGS)<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Doc. No. 26] |

In this lawsuit, Plaintiffs allege that Defendants violated their constitutional rights in connection with physical examinations performed on minor plaintiffs J.C.B. and A.J.B. ("Minor Plaintiffs") after they were removed from the custody of their parents, Plaintiffs John and Heather Benavidez ("Parents"). In response to a motion to dismiss the original complaint, Plaintiffs filed a first amended complaint ("FAC"). After the Court granted Defendants' motion to dismiss the FAC, Plaintiffs filed a second amended complaint ("SAC"). Defendants now move to dismiss the SAC. Their motion has been fully briefed, and the Court deems it suitable for submission without oral argument.[1] As discussed below, the motion is granted.

---

[1] The hearing scheduled for March 6, 2019, is therefore **VACATED**.

1

## I. Allegations in the SAC

On March 18, 2016, Defendants Jennifer Lisk and Benita Jamison, who were employees of the San Diego Health and Human Services Agency ("HHSA"), which is a subdivision of Defendant San Diego County (the "County"), applied for and obtained a protective custody warrant to remove the Minor Plaintiffs from their Parents. [*Id.* at ¶ 25.] On the same day, Lisk and Jamison, along with another County social worker named Christina Morse and four police officers, arrived at Plaintiffs' home to remove J.C.B. and A.J.B. [*Id.* at ¶ 26.] Lisk and Morse then transported the Minor Plaintiffs to Polinsky Children's Center ("Polinsky" or "PCC"). [*Id.* at ¶ 28.]

At some point prior to the March 21, 2016, detention hearing concerning the removal of the Minor Plaintiffs, Lisk and Jemison submitted a Detention Report to the court. [*Id.* at ¶ 30.] A policy enacted by the County on February 9, 2015 (the "2015 Policy"), required employees to include in detention reports a discussion of the efforts they have made to obtain parents' consent to the County performing a medical examination of their children at PCC, and to advise the parents of their right to be present at the examination. [*Id.* at ¶ 17.] The 2015 Policy also required employees to take reasonable steps to locate the parent and obtain consent before seeking a court order for a medical examination of a removed child. [*Id.*] The Detention Report submitted by Lisk and Jemison did not contain any discussion of any efforts made to obtain the Parents' consent to medical examinations of the Minor Plaintiffs. [*Id.* at ¶ 30.] Further, neither Lisk nor Jemison, nor any other County employees, had sought Parents' consent or advised them that they could be present during any medical examination of the Minor Plaintiffs. [*Id.*]

The detention hearing took place on March 21, 2016. [*Id.* at ¶ 29.] Both Parents attended the hearing. [*Id.* at ¶ 32.] At no time prior to the detention hearing had Lisk, Jemison or any other County employee spoken with or notified the Parents about medical examinations of the Minor Plaintiffs at PCC. [*Id.*] No discussion of any medical examinations occurred during the detention hearing either. [*Id.* at ¶ 34.] However, "at some time before or after the [detention hearing] Defendants Lisk, Jemison and/or Does 1

through 50 submitted a request that the Court sign an 'Order Authorizing Medical Examination and Treatment' . . . of the minor Plaintiffs." [*Id.* at ¶ 35.] The Orders (one for each Minor Plaintiff) were entered on March 21, 2016 (the same day as the detention hearing) and state:

> Having found that (1) the County of San Diego Health and Human Services Agency ("Agency") has made reasonable efforts to locate or contact a parent and/or guardian of the above-named child to notify them of the Agency's request for a medical examination and treatment of their child who is in the care of the Agency, but such efforts have been unsuccessful; or (2) upon request of the Agency, the child's parent or guardian has objected to the medical examination and treatment of the child; and/or (3) the Agency has made reasonable efforts to schedule the examination of the child for a time when the parent or guardian is available to attend, but such efforts have been unsuccessful, this court orders as follows:
> 1.  The Agency may conduct a pediatric medical examination on the child by a licensed physician while the child is in a facility operated by the Agency or any licensed certified foster home, approved kinship/non-related extended family member home, or public or private institution. This examination may include blood and/or urine testing when recommended by a physician for treatment and/or for diagnostic purposes or under the DEC Protocol. The physician will document all observations made during the examination, as well as any information provided by the child…

[*Id.* at ¶ 36; Exs. I, J to Defendants' Request for Judicial Notice.][2] Plaintiffs allege that none of the three alternative findings by the state court in the first paragraph quoted above are true, and that Lisk and Jemison were aware that these statements were false when they submitted the Orders to the state court. [*Id.* at ¶ 37.] Specifically, according to the SAC, Lisk and Jemison knew and did not inform the state court that: "(1) No effort had been made to 'locate and contact' Heather or John regarding the County's request for the

---

[2] Defendants' request judicial notice of eleven documents in connection with their motion to dismiss. [Doc. No. 26-2.] Plaintiffs oppose the request only with respect to one of those documents, characterized as an excerpt of a PCC medical log, and attached as Exhibit K to the request. [Doc. No. 29.] Because the Court did not consider Exhibit K in connection with this opinion, the request for judicial notice is **DENIED AS MOOT** with respect to that document. The request is **GRANTED** with respect to the remaining documents that are not opposed by Plaintiffs.

3

physical examination of the Minor Plaintiffs; (2) John and Heather were never told about the County's request; (3) that John and Heather were not given the opportunity to object to any exams; and (4) Heather and John were never told that an examination was being requested or when or where the Minor Plaintiffs were scheduled for the physical examinations." [*Id.* at ¶ 37 (emphasis omitted); *see also id.* at ¶ 38.]

On March 22, 2016, "medical procedures, including examinations, were conducted on J.C.B. and A.J.B. . . . [T]hese examinations included . . . a full body inspection including the children's genital and/or anal areas, obtaining urine to test, and drawing blood and/or vaccinations." [*Id.* at ¶ 39.] Neither Parent was ever informed that these examinations would take place and were not given the opportunity to consent or object to the examinations. [*Id.* at ¶ 41.] Further, the Parents did not become aware that the examinations had occurred until after the Minor Plaintiffs were released from PCC. [*Id.* at ¶¶ 42, 43.]

**II. Legal Standards Governing Motions to Dismiss**

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Discussion

The SAC asserts two claims. First, Plaintiffs assert a claim under 42 U.S.C. § 1983 alleging that Lisk and Jemison violated Plaintiffs' constitutional rights by causing the Minor Plaintiffs to undergo the medical examinations without notice to the Parents or their presence at the examinations. Second, Plaintiffs assert a claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), against the County alleging that the County's policies and practices caused the violation of their constitutional rights surrounding the medical examinations of the Minor Plaintiffs.

#### A. § 1983 Claim Against Lisk and Jemison

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140.

The Ninth Circuit recently held that "the County violates parents' Fourteenth Amendment substantive due process rights when it performs the Polinsky medical examinations without notifying the parents about the examinations and without obtaining either the parents' consent or judicial authorization." *Mann v. County of San Diego*, 907

F.3d 1154, 1160-61 (9th Cir. 2018). This is because the "Constitution assures parents that, in the absence of parental consent, [physical examinations] of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an examination exist and that the administration of the procedure is reasonable under all the circumstances." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) (quoting *Emrik v. Chemung Cty. Dept. of Soc. Servs.*, 911 F.2d 863, 867 (2d Cir. 1990)). In addition, absent exigent circumstances, performing medical examinations of children without at least attempting to notify the parents or obtaining a court order also violates the children's Fourth Amendment rights. *Mann*, 907 F.3d at 1166-67. Thus, "the County is constitutionally required to provide parental notice and obtain parental consent or judicial authorization for the protection of parents' and children's rights alike." *Id.* at 1167.

Defendants argue that no Constitutional rights were violated because the medical examinations were conducted pursuant to a court order. The rights articulated by *Wallis* and *Mann*, however, do not allow the County to avoid its obligation to provide notice to parents or eliminate the parents' right to be present at the medical examinations. To the contrary, the cases make clear that a court order is required when the parents object to the examinations *after* receiving notice. *See, e.g., Mann,* 907 F.3d at 1163 ("*Should a parent refuse to consent*, the County may obtain judicial authorization for the examination.") (*emphasis* added); *Swartwood v. County of San Diego*, 84 F.Supp. 3d 1093, 1121 (S.D. Cal. 2014) ("[U]nder *Wallis*, parental consent is unnecessary where 'a judicial officer has determined, *upon notice to the parents, and an opportunity to be heard*, that grounds for such an examination exist and that the administration of the procedure is reasonable under all the circumstances.'" (*emphasis* added) (quoting *Wallis*, 202 F.3d at 1141). Thus, a court order is not an alternative to parental notice. Nor does the existence of a court order

automatically[3] entitle the County to conduct the examinations outside of the presence of the parents. "[A] parent's right to notice and consent is an essential protection for the child and the parent, no matter what procedures are used." *Mann*, 907 F.3d 1162.

Here, the SAC alleges that the County conducted the medical examinations of the Minor Plaintiffs without providing notice to the Parents even though they could have provided notice because the Parents were participating in the juvenile court process. It further alleges that Lisk and Jemison, in their roles as County employees, caused these examinations to occur without notice to the Parents by submitting the Orders to the juvenile court and either misrepresenting to the juvenile court that notice had been provided or failing to disclose to the juvenile court that notice had not been provided. These allegations are sufficient to allege a violation of Plaintiffs' constitutional rights to "family association [which] includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141. They also sufficiently allege a violation of the Parents' "right arising from the liberty interest in family association to be with their children while they are receiving medical attention (or to be in a waiting room or other nearby area if there is a valid reason for excluding them while all or a part of the medical procedure is being conducted)." *Wallis*, 202 F.3d at 1142. Likewise, the SAC alleges a violation of the Minor Plaintiffs' rights to have their Parents present during the examinations. It is less clear,

---

[3] Of course, in circumstances where the parents are out of the picture or cannot be located, a court order making such a finding would presumably suffice to satisfy the County's obligations not to violate the parents' or children's constitutional rights because there would be a legitimate basis for conducting the examinations outside of the parents' presence. *See generally Greene v. Camreta*, 588 F.3d 1011, 1036 (9th Cir. 2009) ("The language of *Wallis* is clear and unambiguous: government officials cannot exclude parents entirely from the location of their child's physical examination absent parental consent, some legitimate basis for exclusion, or an emergency requiring immediate medical attention.") (*vacated in part by Greene v. Camreta*, 611 F.3d 1201 (9th Cir. 2011)). Considering that the Parents here allegedly attended a hearing before the juvenile court on the day the Orders were signed, no such legitimate basis is apparent from the allegations in the SAC.

7

however, whether the SAC can state a claim against Lisk and Jemison for these alleged constitutional violations.

### B. The *Rooker-Feldman* Doctrine

Defendants next argue that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine because their complaint is a *de facto* appeal of the juvenile court's order authorizing the medical examinations. In the order dismissing the FAC, the Court found merit in this argument, and Defendants argue that the SAC does not remedy any of the deficiencies identified by the Court. Although Defendants are correct that the SAC does not add any material factual allegations about Plaintiffs' claims, upon further consideration of the law and of Plaintiffs' allegations, the Court has concluded that its prior order was erroneous and that the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction.

Under the *Rooker–Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005–06 (1994) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). Review of state court decisions may only be conducted in the United States Supreme Court. *Feldman*, 460 U.S. at 476 & 486; *Rooker*, 263 U.S. at 416; *see also* 28 U.S.C. § 1257. The *Rooker-Feldman* jurisdictional bar applies even if the complaint raises federal constitutional issues. *Feldman*, 460 U.S. at 486. More specifically, the bar applies if the challenge to the state court decision is brought as a § 1983 civil rights action. *See Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995).

"[A] federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Doe v. Mann*, 415 F.3d 1038, 1043 (9th Cir. 2005) (quoting *Noel v. Hall*, 415 F.3d 1145,

1158 (9th Cir. 2003)). The *Rooker–Feldman* doctrine applies not only to final state court orders and judgments, but to interlocutory orders and non-final judgments issued by a state court as well. *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

Notwithstanding the foregoing, "for *Rooker-Feldman* to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). "If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction." *Noel*, 341 F.3d at 1164. "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Kousgasian*, 359 F.3d at 1140-41. "Extrinsic fraud is 'conduct which prevents a party from presenting his claim in court.'" *Ragan v. County of Humboldt Dept. of Health & Human Servs.*, Case No. 16-cv-05580-RS, 2017 WL 878083, at *4 (N.D. Cal. Mar. 6, 2017) (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)).

Here, Plaintiffs are not arguing that the Orders were legally erroneous. Rather, Plaintiffs contend that Lisk and Jemison's actions before and after the Orders are the legal wrongs that violated their constitutional rights. Assuming the truth of the allegations in the SAC, Lisk and Jemison submitted the Orders to the juvenile court for signature, outside of the presence of the Parents, and either without informing the juvenile court that no efforts had been made to provide notice to the Parents, or affirmatively misleading the juvenile court that such efforts had been made. By allegedly doing all of this outside of the presence of the Parents, Lisk and Jemison effectively prohibited the Parents from the opportunity to be heard by the juvenile court with respect to the propriety of the medical examinations, and from being present for the medical examinations themselves.[4] These alleged legal

---

[4] This fact is what distinguishes this case from one that truly appeals from a state court order. If Plaintiffs had been given the opportunity to argue, before the medical examinations took place, that the County had

wrongs by Lisk and Jemison cannot avoid scrutiny because they were successful in deceiving the juvenile court. Because Plaintiffs allege "a cause of action for extrinsic fraud on a state court and seek[] to set aside a state court judgment obtained by that fraud," the *Rooker-Feldman* doctrine does not bar subject matter jurisdiction. *Kougasian*, 359 F.3d at 1141.

### C. Qualified Immunity

"Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Because "[i]t is 'an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (*emphasis* in original). To that end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine whether Lisk and Jemison are immune from suit, the court must consider "whether [their] conduct violated a constitutional right, and if so, whether that right was clearly established at the time of the event in question." *Mueller*, 576 F.3d at 993 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "The relevant, dispositive inquiry in

---

not provided proper notice (an argument that likely would have failed considering that the Parents' ability to make it would mean that they had been notified of the examinations), and the juvenile court had rejected that argument and found that notice was proper, the *Rooker-Feldman* doctrine would prohibit this Court from entertaining a claim that Lisk and Jemison were liable for extrinsic fraud on the juvenile court because the juvenile court already have considered and rejected that argument. Here, on the other hand, Lisk and Jemison allegedly took measures to prevent Plaintiffs from making this argument to the juvenile court by submitting the proposed order outside of Plaintiffs' presence and without their knowledge.

10

determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. In other words, the right's "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092–93 (9th Cir. 2013) (*quoting Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mueller*, 576 F.3d at 994 (*quoting Saucier*, 533 U.S. at 201). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). "The standard is an objective one that leaves 'ample room for mistaken judgments.'" *Mueller*, 576 F.3d at 992 (quoting *Malley*, 475 U.S. at 343).

### 1. Whether a Constitutional Right Was Violated *By Lisk and Jemison*

As discussed above, the constitutional rights in question here include the Parents' right to receive notice of and be present for medical examinations of the Minor Plaintiffs, and the Minor Plaintiffs' rights to have their Parents make decisions about the medical examinations and be present for the examinations themselves. These rights, as a broad general proposition, have been clearly established under Ninth Circuit law. *See, e.g., Mann*, 907 F.3d 1154; *Wallis*, 202 F.3d 1126. The question, however, is not whether Plaintiffs' constitutional rights were violated by the collective actions (or inactions) of the County. If the allegations in the SAC are true, Plaintiffs' rights clearly were violated because the Parents were never notified of the Minor Plaintiffs' medical examinations. Rather, the question is whether *Lisk* and *Jemison* can be liable for the alleged constitutional violations as a result of their specific actions. The answer is not so clear.

*Wallis* and *Mann*, and the other cases discussing parents' right to advance notice when the County intends to conduct a medical examination of their children, say nothing about a constitutional right to notice from particular individuals or notice in a particular

form.⁵ Lisk and Jemison would not have violated the Parents' or Minor Plaintiffs' constitutional rights by failing to provide notice to the Parents if the Parents had been notified of the medical examinations by some other County employee. Thus, Lisk's and Jemison's alleged actions in submitting the Orders to the juvenile court did not violate Plaintiffs' constitutional rights (or at least those rights established in *Wallis* and *Mann*) solely because *Lisk* and *Jemison* had not personally provided notice to the Parents. This is because the Parents only had a constitutional right to be notified of the medical examinations, not a constitutional right to be notified by Lisk and Jemison.⁶ In any event, the Court need not definitively resolve here whether Plaintiffs have adequately alleged that Lisk and Jemison violated their constitutional rights, and can instead turn to the question of whether such rights were clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009) (holding that district courts may address whether the constitutional right is clearly established "before turning to the more difficult question whether the relevant facts make out a constitutional question at all").

### 2. Were the Constitutional Rights In Question Clearly Established?

Even if Lisk's and Jemison's actions violated Plaintiffs' constitutional rights, Lisk and Jemison are entitled to qualified immunity unless the constitutional rights were "clearly established" at the time. As stated above, "[t]o be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right.'" *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

---

⁵ Also absent from *Wallis* and *Mann* is any discussion of a parent's right to be notified when the County seeks a court order to conduct a medical examination of a child. The cases only discuss notice from the County of the intent to conduct the examinations themselves.

⁶ In this regard, this case is distinct from the many cases addressing qualified immunity with respect to a claim of excessive force by a police officer. Individuals have a constitutional right to not be subjected to excessive force from every police officer. Parents do not have a constitutional right (at least under *Mann* and *Wallis*) to receive notice *from any particular employee* that the County intends to perform medical examinations on their children, only the right to receive notice from someone and be given the opportunity to be present at the examination.

The material factual allegations related to Lisk's and Jemison's actions can be summarized as follows: (1) neither Lisk nor Jemison nor anyone else from the County ever provided notice to the Parents of the County's intent to conduct medical examinations on the Minor Plaintiffs; (2) Lisk and Jemison presented the Orders to the juvenile court for signature outside of the presence of the Parents and without personally notifying the Parents that they were doing so or confirming that such notice had been given; (3) the juvenile court signed the Orders; (4) the Parents were not made aware of the executed Orders until after the dependency proceedings terminated; and (5) the medical examinations of the Minor Plaintiffs occurred the day after the Orders were signed. Lisk's and Jemison's conduct was not so obviously outside the constitutional pale that only the "plainly incompetent or those who knowingly violate the law" would have done the same. *See Mueller*, 576 F.3d at 992 (*quoting Malley*, 475 U.S. at 341). Thus, before imposing liability on Lisk and Jemison, the Court must identify precedent as of March 21, 2016— the date on which they allegedly presented the Orders to the state court judge—that put them on notice that presenting a proposed order granting the County the right to conduct medical examinations of the Minor Plaintiffs without having provided notice to the Parents themselves, or having a good faith basis to believe that the Parents had been notified by someone else, would make them liable for a violation of Plaintiffs' constitutional rights. *See id.* Plaintiffs offer no such authority. Absent such authority, it could not have been clear to Lisk and Jemison that their alleged conduct was unlawful. *Saucier*, 533 U.S. at 202.

Although the SAC repeatedly states that Lisk and Jemison made affirmative misrepresentations to the juvenile court it does not allege any facts that support these conclusions. Instead, at best, the SAC allows the Court to infer only the mere possibility of misconduct by Lisk and Jemison, which is insufficient to state a claim. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citing Fed. R. Civ. P. 8(a)(2)). If Plaintiffs had alleged

facts sufficient to demonstrate affirmative misrepresentations to the juvenile court if proven true, Lisk and Jemison would not be entitled to qualified immunity because a social worker accused of committing perjury in court dependency proceedings is not entitled to qualified immunity. *Hardwick v. County of Orange*, 844 F.3d 1112, 1118-20 (9th Cir. 2017). Plaintiffs have already had three opportunities to make such allegations, and considering that the Parents were not present at any alleged conversations between Lisk and Jemison and the juvenile court concerning the Orders, leave to amend to make specific allegations concerning what Lisk or Jemison told the Court when presenting the Orders would be futile.[7] In light of the foregoing, Lisk and Jemison are entitled to qualified immunity on Plaintiffs' section 1983 claim. The first claim in the SAC is dismissed with prejudice.

### D. *The Monell* Claim Against the County

Following *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "it is well-settled that in claims brought under 42 U.S.C. § 1983, municipalities are liable only for constitutional violations resulting from an official 'policy or custom.'" *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 694). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (*emphasis* in original). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal

---

[7] In their opposition brief, Plaintiffs effectively concede that they have no information about any specific representations made by Lisk and Jemison to the juvenile court. Instead, Plaintiffs argue that Lisk and Jemison must have made some sort of misrepresentation simply because the juvenile court entered the Orders. [Doc. No. 28 at 16-17.] To adequately plead a claim that would overcome qualified immunity, Plaintiffs must allege exactly what Lisk and Jemison each told the juvenile court, and not simply that one or both of them must have said something to the juvenile court that would have caused it to make at least one of the three findings contained in the Orders. Plaintiffs simply assume that Lisk and Jemison must have perjured themselves, but they do not allege any facts about the actual statements to the juvenile court that constituted perjury. Because "the doctrine of qualified immunity assumes that [government actors] do not knowingly violate the law," *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994), Plaintiffs cannot simply assume that Lisk and Jemison knowingly perjured themselves to overcome qualified immunity.

liability collapses into *respondeat superior* liability." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997).

"The 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Castro*, 833 F.3d at 1075 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)). "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. Here, the SAC alleges that in 2015, the County enacted a policy that:

> no medical examination may occur at PCC unless or until there is a signed consent for that examination or a court order. Additionally, prior to seeking a court order for a medical examination, the social worker must take reasonable steps to locate the parent and obtain consent. This policy specifies that if the child is removed on or after 2/10/15 and a parent is available to sign the consent form, the social worker must ask one parent to sign the Consent for Examination form, indicating whether he or she wants to be present at the intake examination. The social worker is required to make every attempt to have a parent sign a consent form for a child entering protective custody. *Social workers must address whether the parent signed or did not sign the Consent form in the Detention Report.*

[Doc. No. 18 at ¶ 17 (*emphasis* in original).] Based on this 2015 Policy, the Ninth Circuit held in *Mann* that "the County's current policy is to obtain parental consent and provide advance notice to the parents so that they can be present at the examination." *Mann*, 907 F.3d at 1166. The SAC does not allege, and Plaintiffs do not argue, that this 2015 Policy caused the alleged violations of Plaintiffs' constitutional rights. Instead, Plaintiffs essentially assume that because the 2015 Policy allegedly was not followed here, it also must not be followed in other situations. However, as discussed in the order dismissing the FAC, "[a] plaintiff cannot prove the existence of a *municipal* policy or custom based on solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir.

1989); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

The SAC also does not remedy any of the defects identified in the order dismissing the FAC to the extent Plaintiffs attempt to assert a *Monell* claim based on a failure to train. The SAC offers no factual allegations. It only makes conclusions of inadequate training based "on information and belief" without identifying the facts on which that "information and belief" is based. *City of W. Sacramento, California v. R & L Bus. Mgmt.*, No. 2:18-CV-900 WBS EFB, 2018 WL 6019340, at *2 (E.D. Cal. Nov. 16, 2018) ("While facts may be alleged on information and belief, conclusory allegations asserted on such a basis are insufficient to state a claim."). Accordingly, for all of the reasons discussed for dismissal of the *Monell* claim in the FAC, this *Monell* claim in the SAC is dismissed as well.

### IV. Disposition

As discussed above, it is hereby **ORDERED** as follows:

1. The motion to dismiss is **GRANTED** with respect to the first claim in the SAC on the grounds that Lisk and Jemison are entitled to qualified immunity;

2. The motion to dismiss is **GRANTED** with respect to the second claim in the SAC because Plaintiffs have failed to allege a direct causal link between a County policy, custom, or practice and the alleged constitutional violations; and

3. Because Plaintiffs have already amended their complaint twice and any further amendments would be futile, the SAC is **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED.**

Dated: February 12, 2019

Hon. Cathy Ann Bencivengo
United States District Judge